SAMUEL BARTH *vs.* SIMON ROSENFELD and MOSES OETTINGER, Trading as ROSENFELD & CO. and JAMES T. SMITH.

*Construction of section 58, Article 29, of the Code of Public General Laws — Appeals from Courts of Equity — Trial of issues by a Jury in virtue of section 58, Article 29, of the Code — Interlocutory Decree — Practice in Equity — Practice in the Court of Appeals — Right of the Circuit Court of Baltimore City to assemble where its convenience dictates — Issues in Equity tried by a Jury.*

The language, "when proceedings shall be had in such case as is usual in like cases in Equity," in section 58 of Article 29 of the Code of Public General Laws, does not import any change in the organic character of the Circuit Court of Baltimore city, as a Court of Equity, nor imply any material change in the proceedings and practice in Equity, in pleadings or evidence; it relates to the incidents of the trial and effect of the verdict, as a means of informing the mind of the Court.

In the execution of the special power vested in the Circuit Court of Baltimore City, by the 58th section of Article 29 of the Code, is included, as means necessary to the end, the right of framing the issues, and directing the position of the parties litigant, as plaintiffs or defendants; and the Court would have the right to instruct the jury, and to admit or exclude the evidence offered.

The right of appeal from Courts of Equity is a statutory right, and does not exist except where expressly given.

Upon the trial of issues by a jury ordered by the Circuit Court of Baltimore City, in virtue of section 58 of Article 29 of the Code of Public General Laws, bills of exception to the rulings of the Court will not lie.

A decree requiring money to be paid into Court, enjoining the defendants from further proceedings at law, and requiring them to interplead and answer, is interlocutory, and at all times, prior to a final decree, subject to revision and alteration, being merely ancillary to further pro-

Barth *vs.* Rosenfeld, *et al.*

ceedings; and may with propriety be rescinded, as having been impro-
vidently and prematurely passed.

A jury having been ordered by the Circuit Court of Baltimore City, in
virtue of the provisions of section 58, Article 29, and the sheriff having
made return that he had summoned twenty lawful jurors, the Court of
Appeals cannot inquire whether they were a part of the pannel sum-
moned to attend some other Court, from which they were taken, or
whether they were in attendance on some other Court, or not.

The jurisdiction of the Circuit Court of Baltimore City is co-extensive
with the limits of the city, and unless restrained by law, it may assem-
ble, within such limits, wherever its convenience dictates.

When issues are framed in a Court of Equity, they are so condensed as
to present some proposition, the affirmative or negative of which can-
not be affirmed or denied, without finding all other facts necessary to
the conclusion.

Where no objection is made to the form of the issues before the trial in
the Court below, such objection will not be considered in the Court
of Appeals.

Upon the rendition of the verdict upon issues submitted to a jury by the
Circuit Court of Baltimore City, in virtue of section 58, Article 29, the
party against whom it is given, if he thinks it is contrary to evidence,
has the right to move for a new trial, or to proceed to take further tes-
timony.

APPEAL from the Circuit Court of Baltimore City.

A statement of the case is contained in the opinion of the
Court.

The cause was argued before BARTOL, C. J., BOWIE,
GRASON, MILLER and ROBINSON, J.

*John Henry Keene, Jr.*, for the appellant.

[The arguments upon the exceptions are omitted, the Court having
decided that they were not before it for review.—REP.]

A decree requiring the payment over of funds, enjoining
defendants from proceedings at law, and requiring them to
interplead, (which was passed on 14th April, 1870) is both

*in personam* and *in rem;* after the lapse of a term it became enrolled. Such a decree could be vacated only through a bill of review filed within nine months from the date of its passage. *Wood vs. Fulton & Starck*, 2 *Harris & Gill*, 72; *Barroll's Ch. Prac.*, 57, 195; *Pfeltz vs. Pfeltz*, 1 *Md. Ch. Dec.*, 455; *Lovejoy vs. Irelan*, 19 *Md.*, 56; *Williams, et al. vs. Banks, et al.*, 19 *Md.*, 524; *Noland vs. Glenn*, 2 *Md. Ch. Dec.*, 368; *Alex. Ch. Prac.*, 177, 179; *McClellan vs. Crook*, 7 *Gill*, 333; *Tabler vs. Castle*, 12 *Md.*, 144.

The same law applies to an interlocutory decree. *Alex. Ch. Prac.*, 177.

The decree of the 14th of April, 1870, stands for what it purported to be until regularly revised. *Estep vs. Watkins*, 1 *Bland.*, 486; *Pfeltz vs. Pfeltz*, 1 *Md. Ch. Dec.*, 455. It was so far final that an appeal would lie therefrom under the Act of 1841, ch. 11.

The order of the 25th of February, 1871, rescinding this decree in so far as it required the defendants to interplead, passed after the lapse of nine months, was erroneous, without authority of law, precedent or sanction in Chancery Practice; and all subsequent proceedings under said order were without color of equitable warrant, and *coram non judice;* because, the decree of the 14th of April, could only have been rescinded upon bill of review, if at all. It could not be vacated upon a simple petition.

The subsequent order of March 4th, 1871, requiring the defendants to interplead was erroneous. If the answer of the appellant and the appellees were filed in obedience to the decree of April 14th, it was manifest error to direct a repleading. The bill and answer should have been set down for hearing, and in the meantime, in accordance with the practice, a commission issued to take testimony.

The order for the writ of summons for a jury, passed also on the 4th of March, was erroneous, because no time had been afforded the appellants or appellees to comply with the requirements of the order passed a few breaths prior to that

for the summons, requiring them "*to come into Court and interplead as asked for in said bill.*" If the order of the 25th of February, vacated the decree of the 14th of April, the answers interpleading were of no effect, and could not have any status in the eye of the chancellor as interpleaders. There being then no interpleading on the 4th day of March, there was nothing for trial, no issue of law or fact before the chancellor upon which to predicate the writ of summons. If the decree of the 14th of April was valid, and the proceedings under it regular, then there was no issue, for the appellees had not denied by their answers the material facts alleged by the appellant, nor had they filed any replication thereto which operated to confess the facts averred by the appellant.

By the uniform practice in chancery, the trial of issues of fact will only be directed where the evidence taken involves so grave a doubt that the chancellor is unwilling to assume the burden of deciding it; and for his own relief refers it to a jury in order that their verdict may inform and satisfy the conscience of the Court; and even then their verdict is not binding upon the chancellor. *Alex. Ch. Prac.*, 174; *Hoffman vs. Smith*, 1 *Md.*, 478, 489; *Barroll's Ch. Prac.*, 167; *Le Guen vs. Gouverneur & Kemble*, 1 *Johns. Cas.*, 498; *Hilleary vs. Crow*, 1 *H. & J.*, 542; *Baker vs. Williamson*, 2 *Penna. State Rep.*, 116; *Adam's Equity, Amer. Notes*, (*Ed.* 59) 237, sec. 376, (2) *p.* 768, *Notes P. I., No.* 1.

To warrant the sending of an issue the facts must be strongly controverted. *Townsend vs. Graves*, 3 *Paige*, 453; 2 *Story's Equity Juris.*, 1479, *p.* 936; 2 *Daniel Ch. Plead. and Prac.*, (*Perkins' Ed.*) 1085, 1087, *Note* 7, 1093, 1096; 1 *Hoffman's Ch. Prac.*, 502; *Hampson vs. Hampson*, 3 *Ves. & Bea.*, 42.

Section 58, Article 29 of the Code, vests in the Circuit Court of Baltimore City the power, hitherto unknown to chancery, of summoning a jury. The power of trying issues before as well as after the adoption of the Code, belonged to

the practice rather than to the peculiar jurisdiction of the Court. 2 *Story's Eq. Juris.*, sec. 1489; 3 *Green. Ev.*, 261.

Section 12, Article 4 of the Constitution of 1851, provided for the organization of another Court; and the Act of 1853, ch. 112, organized the Circuit Court of Baltimore City, and its provisions are re-enacted in section 55 to 58 of Article 29 of the Code.

Even where equitable and legal functions are united in the same tribunal, the principles of each remain distinct and undisturbed. *New York & New Haven R. R. Co. vs. Schuyler, et al.*, 34 *New York*, 46.

The proper construction of the language of section 58, " whenever in any case instituted in the Circuit Court, a jury is asked for and allowed, or is desired by the judge thereof," is not to enlarge or limit the authority heretofore exercised by chancellors, of trying issues of fact by jury, except by conferring the new power of summoning juries, in such and only such cases where, by the practice heretofore established, issues were properly triable. The object of this Act was to remedy the sending issues to a Common Law Court. It was not to confer a power hitherto unknown to chancellors, of trying any fact by jury.

*M. R. Walter* and *S. Teackle Wallis*, for the appellees.

BOWIE, J., delivered the opinion of the Court.

This case originated in a bill of interpleader, filed in the Circuit Court of Baltimore City on the 14th of April, 1870, by Samuel H. Gover, against Samuel Barth, the appellant, James T. Smith, and Rosenfeld & Oettinger, the appellees, charging that the complainant held, as auctioneer, certain funds in which he had no interest, which were claimed by the defendants adversely to each other, for which he had been sued by the appellant, and which had been attached by the appellees as creditors of one McDowell, and which he, the complainant, prayed leave to pay into Court, and that the

defendants be ordered to interplead, to establish their respective claims, and in the meantime be enjoined from further proceedings at law against the complainant, etc., and that the defendants be required to answer the bill, etc.

The Court, on the same day, ordered the complainant to pay the money into Court, and required the defendants to interplead and answer, setting forth their respective claims to the fund, and enjoined further proceedings at law, until further order.

The appellant, Barth, filed his answer on the 29th of April, 1870, admitting that Gover held the money as auctioneer, he having employed him to sell the goods of which it was the proceeds, and claiming that the goods had been conveyed to him by one McDowell by bill of sale, for a valuable and *bona fide* consideration. He denied the alleged co-partnership with McDowell, and insisted that Smith, Rosenfeld & Oettinger had no legal claim to said proceeds, and that they were not liable to the attachments laid on them. He submits to the jurisdiction of the Court in the premises, concurs in the prayer for interpleader, and consents that the money be paid into Court and there remain until the final adjudication of the claims, and that the injunction be made perpetual. On the 18th of October, 1870, Messrs. Rosenfeld & Oettinger filed their answer, admitting the fund to be in possession of the complainant, and that they had issued an attachment on a judgment obtained by them against Francis McDowell for a debt still due them, which they had caused to be laid on the fund in complainant's hands, claiming they were entitled thereto, because the goods were McDowell's and not Barth's, and alleging that Barth's claim was false and fraudulent.

On the 11th of January, 1871, James T. Smith filed his answer, admitting that the complainant held the funds mentioned in his bill, and had no interest therein; that the respondent had caused an attachment to be issued on a judgment, obtained by him against Francis McDowell, to be laid in the hands of the complainant to affect said proceeds of sale,

and averring he is entitled to have his claim satisfied out of said funds, because they are the proceeds of property belonging to McDowell, and not the property of Barth, whose claim to the same he pronounces false and fraudulent. He does not admit the right of the complainant to call upon him to interplead, and reserves his right to object to a decree of interpleader in the premises.

Messrs. Rosenfeld & Oettinger, on the 13th of February, 1871, moved the Court to dissolve the injunction and to rescind the order of the 14th of April, 1870, so far as the same required the defendant to interplead, as premature and inadvertent.

On the 25th of February, 1871, the motion to rescind the order to interplead was granted.

On the 4th of March, the motion to dissolve the injunction was withdrawn.

On the same day a motion was made in open Court that the matters of fact in this case be submitted to a jury, to be summoned under section 58, Article 29, of the Code.

On the same day it was ordered by the Court that the defendants, Samuel Barth, James T. Smith, and Rosenfeld & Oettinger, co-partners, come into Court and interplead as asked for in said bill of complaint, and establish their claims against the funds deposited to the credit of this cause by Samuel H. Gover, complainant; and it is further ordered that the said complainant be and he is hereby discharged from any further liability in said cause, with his proper costs in this behalf sustained.

The Court, by its order of the 4th of March, 1871, reciting that a jury *having been desired,* and *ordered by the Court,* for the hearing and determination of the matters of fact pending in the cause, concerning which the several defendants have answered and impleaded each other, and setting out the claims of the respective defendants, ordered and directed that the jury so summoned should adjudge and try the two issues following:

1. Were the said moneys, which have been so brought into Court by the complainant, the moneys of Francis McDowell, or of Samuel Barth, on the 23d of February, 1870, at the time of the service of the attachment of James T. Smith ?

2. Were the said moneys, which have been so brought into Court by the complainant, the moneys of Francis McDowell or of Samuel Barth, on the 23d of February, 1870, at the time of the service of the attachment of Rosenfeld & Oettinger ?

The defendant, James T. Smith, will stand and proceed as plaintiff on the first issue, and the said Samuel Barth as defendant. The defendants, Simon Rosenfeld and Moses Oettinger, will stand and proceed as plaintiffs on the second issue, and the said Samuel Barth as defendant. The verdict of the jury shall be for the plaintiff or defendant on each issue, if they shall find that at the time therein set forth, the whole of the said moneys belonged to either said McDowell or said Barth ; but if the jury shall find that at the time of the service of the attachments, or either of them, any part of the said moneys belonged to said McDowell, and any other part to the said Barth, they shall specify and declare the amounts they shall severally so find in their verdict, upon each of said issues respectively.

A jury having been impannelled and sworn on the 15th of April, 1871, a verdict was found for the plaintiffs on the first and second issue. The defendant thereupon moved to quash the verdict, for sundry reasons, involving the regularity of the jury process, the conduct of the trial, and the legality of the whole proceedings.

A series of prayers were offered by the appellant and appellees in the course of the trial, some of which were granted, others conceded, and a number rejected.

In the course of the trial, the defendant took eight bills of exception to the rulings of the Court on the prayers and the testimony offered.

On the 14th of October, 1871, the Circuit Court, by its decree, reciting, "A jury having been desired by the Court in

this case, and having been ordered and summoned accordingly therein, in conformity with the law, and issues therein framed, and by the Court directed to be tried by the jury, having been so tried in the presence and under the direction of the Court, and the said jury having rendered a verdict thereupon in favor of the plaintiffs upon both issues, *which verdict is satisfactory to* and *approved by this Court*, it is therefore, by the Court, this 14th of October, 1871, adjudged, ordered and decreed, that the clerk of this Court, out of the moneys deposited in the Court by the complainant, Gover, shall first pay to said Gover his costs in this case incurred, and the sum of $100 for his solicitor's fees in the same, and after such payment shall next pay to the respondent, James T. Smith, the sum of $153.90, with interest thereon, from the 8th of October, 1868, until paid, together with the costs of his judgment and attachment, as shall appear, with his costs in this proceeding, and out of the residue of said fund, if sufficient therefor, shall pay to the respondents, Simon Rosenfeld and Moses Oettinger, the sum of $1,194.25, with interest," etc., etc.

From which decree and entire proceedings, "*ab initio*," the respondent, Barth, appealed.

The first inquiry presented by the appeal is, what is submitted by the record for review?

The judicial power of this State is vested in a Court of Appeals, Circuit Courts, Orphans' Courts, and such Courts for the city of Baltimore as are provided for in the 4th Article of the Constitution of the State.

By the 29th section of Part IV, of Article 4, of the Constitution, it is declared "The Circuit Court of Baltimore City, shall have exclusive jurisdiction in equity within the limits of said city, and all such jurisdiction as the present Circuit Court of Baltimore City has."

Referring to the Code of Public Laws, title "Courts," subtitle "Circuit Court of Baltimore," Article 29, section 56, to find what powers it had, we find it is enacted, that "The said

Circuit Court shall have concurrent jurisdiction with the Superior Court of Baltimore City in all cases in equity, and generally such as have heretofore been conferred on the Chancellor of this State, so far as regards the fifth judicial circuit."

By section 58, it is further enacted, "Whenever in any case instituted in the Circuit Court, a jury is asked for and allowed, or is desired by the Judge thereof, the Judge shall issue an order to the sheriff of Baltimore city, requiring him to summon twenty jurors to attend the Court, when proceedings shall be had in such case as is usual in like cases in equity."

By this section, a special power is conferred upon the Circuit Court of Baltimore City, not exercised by any Court of Equity in the State, and not known to, or exercised by Courts of Equity in England, prior to the organization of our State government.

Courts of Equity had, by their original organization, inherent power and authority to award issues of fact or law, to be sent to Courts of Law for trial, to inform the mind of the Court, but never exercised the power of summoning juries to try questions of fact under their own direction upon testimony taken *"ore tenus."* It is difficult therefore to determine what was meant by the Legislature in the last sentence of the section quoted, viz: "When proceedings shall be had in such case as is usual in like cases in equity."

It cannot be supposed that they import any change in the organic character of the Court as a Court of Equity, since such a construction would conflict with the jurisdiction conferred on the Court by the Constitution, nor can they imply any material change in the proceedings and practice in equity in pleadings or evidence, but must relate to the incidents of the trial and effect of the verdict as a means of informing the mind of the Court. As Courts of Equity exercised originally the right of framing the issues and directing the position of the parties litigant, as plaintiffs or defendants, it is presumed

in the execution of the special powers vested by the Code in the Circuit Court for Baltimore City, these were included as means necessary to the end. Upon the same principle as the intervention of a jury would be nugatory unless the Court summoning them had the power to decide all questions of law arising upon the facts offered in evidence, and the competency of the evidence offered to prove any fact involved in the issues, it results that the Court would have the right to instruct the jury, and to admit or exclude the evidence offered.

The meaning of the terms in the 58th section of the 29th Article of the Code, "When proceedings shall be had in such case as is usual in like cases in equity," may be illustrated by reference to English authority, describing the proceedings upon issues of fact, sent by Courts of Equity to a Court of Law to be tried. In *Gresley's Equity Evidence*, they are thus described :

"As the whole proceeding takes place *solely* for the purpose of informing the conscience of the Court, and is not conclusive, the Court, in directing it, is not strictly bound down to the forms and incidents of a regular trial. Sometimes it insists on more than the common law tribunal would have been satisfied with, as in the issue '*devisavit vel non*,' where the examination of all the three witnesses is indispensable. Sometimes it is satisfied with less, as we have just seen with respect to the admissibility of evidence. * * * *

"When the verdict is returned, the equity Judge does not look barely at the wording of it as he would if a verdict on a former trial were produced in evidence, but he inquires into all that passed during the proceedings. For this purpose he listens to the statements of counsel, detailing what occurred at the trial; and if he sees sufficient reason for it, he sends to the Judge who tried the issue, for his notes. After all, he may, if he thinks fit, make no use whatever of the verdict, but treat it as a mere nullity." *Gresley's Eq. Ev.*, 527.

"He will often pay no heed to the most flagrant misdirections of the Judge, or mistakes as to the admission of

evidence, if he can satisfy himself what the verdict ought to have been, on the admitted and tendered evidence which was sound." *Gresley's Eq. Ev.*, 527.

In 2 *Daniels' Chancery Practice*, 1106, it is said : " It may be mentioned here, that upon the trial of an issue, a bill of exceptions for an alleged misdirection of the Judge will not lie, but the regular course is to apply to the Court which directed the issue for a new trial. In *Armstrong vs. Armstrong*, however, a bill of exceptions was tendered and signed by the Judge, and the objection to its regularity having been waived, it was argued and decided upon in the Exchequer Chamber."

These citations are sufficient to show that, independently of reason and the fitness of things, bills of exceptions are not allowed in England upon issues sent from Courts of Equity to Courts of Law.

There is a contrary practice existing in some of the States, but no authority or precedent for such practice in this State, except *in Courts of Law*, in pursuance of express provisions of the Code.

Article 5 of the Code of Public Laws, title " Appeals," sub-title, " Appeals from Courts of Law," section 5, enacts : " In cases of issues sent from the Orphans' Court or a Court of Equity to *a Court of Law*, to be tried, exceptions may be taken to any opinion given by the Court before whom such issues shall be tried, and an appeal taken on such exceptions."

It need hardly be said, that provisions for appeals from Courts of Law, do not extend to appeals from decrees of Courts of Equity. The right of appeal from Courts of Equity is a statutory right, and does not exist, except where expressly given. So the right to take exceptions was conferred by the Statute of Westminister, 2 *Edw'd* I, *ch.* 31, and was confined to Courts of Common Law. *Mayhew vs. Soper*, 10 *G. & J.*, 366.

If we are correct in these conclusions, the bills of exceptions in this case form no part of the record, and are not before us for review.

The motion to quash the verdict being an incident of the jury trial, the reasons in support of that motion, are not subject to the same objection, and will be considered in their appropriate order. The appeal from the final decree brings before us all the interlocutory orders and proceedings pertaining to a Court of Equity, and necessarily involved in the jury process.

The first objection to the proceedings on the bill of interpleader is, that the decree of interpleader passed on the 14th of April, 1870, on the filing of the bill, and before answers filed, was afterwards, on motion of the defendants, on the 25th of February, 1871, rescinded. Such a decree, it is said, could be vacated only through a bill of review filed within nine mouths from the date of its passage.

There is no doubt of the correctness of the general rule as established by the authorities cited by the appellant, applied to final decrees; but the decree in this case was clearly interlocutory, settled the rights of no party; on the contrary, called on the parties to interplead, and was evidently passed prematurely and improvidently. The decree was at all times prior to a final decree, subject to revision and alteration, being merely ancillary to further proceedings, and it is apparent, its being rescinded, to be renewed again after the answers were filed, was intended to correct the record; by amending which, no party was prejudiced, and from which, of course, no one could appeal. All the proceedings intermediate to the issues, being matters of detail preliminary to the time, are presumed to be *rite acta*, unless the contrary appears. Whatever anomalies appear, such as motions not in writing, on the equity side of the Court, being mere defects in form and not of substance, are not subjects of appeal.

The record, the verity of which cannot be impeached, shows that an order was passed on the 4th of March, 1871, requiring a jury to be summoned in the cause, to appear in the Circuit Court on the 5th of April—in accordance with which the sheriff returns that he has summoned twenty

lawful jurors. This Court cannot inquire whether they were a part of the panel summoned to attend some other Court, from which they were taken, or whether they were in attendance on some other Court or not. So, with regard to the *locus in quo*, in which the Circuit Court for. the City of Baltimore, held its session, we are not authorized in this collateral way to decide whether the validity of the acts of a Court depends upon the room they occupy. This Court does not officially know where the Circuit Court for the City of Baltimore convenes. Its jurisdiction is co-extensive with the limits of the city, and unless restrained by law, which has not been produced, may assemble wherever its convenience dictates.

We have before intimated that the power to summon a special jury being expressly conferred on the Circuit Court of the City of Baltimore by the Code, all the incidental powers were necessarily included, and these embraced the formation of the issues and the direction of the position the claimants should occupy in trying the same.

It does not appear to us that the issues are liable to exception on the ground that they present issues of law and not issues of fact "An issue is a single, certain, and material point, issuing out of the allegations or pleadings of the plaintiff and defendant." *Chitty's Plead's*, 653. When framed in a Court of Equity, they are so condensed as to present some proposition, the affirmative or negative of which cannot be affirmed or denied without finding all other facts necessary to the conclusion. Thus in the feigned issue, "the pretended plaintiff declares that he laid a wager of £5.00 with the defendant, that A was heir-at-law to B; and then avers that he is so; and brings his action for the £5.00. The defendant allows the wager, but avers that A is not the heir at law to B; and thereupon the issue is joined, which is directed out of chancery to be tried; and thus the verdict of the jurors at law, determines the fact in the Court of Equity." 2 *Story's Eq. Jur.*, 1479.

In our practice feigned issues are dispensed with, but some general question, as "*devisavit vel non*," "was the will obtained by fraud," etc., is substituted, all of which involve law and fact, as much as the issues presented in the present case.    Whether the party should be plaintiff or defendant depends in a great measure on the form of the proceeding; in this instance, the burden of proof was on the parties attaching; the position of the defendant was that of one pleading "*nulla bona*," if the plaintiffs failed to establish the property of McDowell in the fund, the verdict must have necessarily been for the defendant.

It does not appear, however, from the record, that the defendant at any time before the trial moved the Court to make himself plaintiff in either of said issues, or tendered any other issue to the Court, or objected to the issues as framed, and such objection cannot now be considered.

The verdict of the jury having been in favor of the plaintiffs on both issues, the Court below was satisfied that the fund in controversy was the property of McDowell and not of Barth, and upon this evidence proceeded to decree that the moneys should be applied in manner and form as set out in the decree.

The appellant had the right to move for a new trial, if he thought the verdict was contrary to evidence, or to proceed to take further testimony.    "When a Court orders an issue of fact, and a verdict is founded upon the issue in favor of either party, it is not necessarily conclusive upon either party; and notwithstanding the verdict, the party against whom it is given has a right to proceed in the cause, and to go into evidence in support of his case, notwithstanding the Court, upon a motion for a new trial, (which the Court is at full liberty to entertain,) refuses to disturb the verdict. Generally speaking, such a verdict is treated as conclusive between the parties, for persons who have had an ample opportunity of bringing before a jury such evidence as they think proper and material to the case, are generally satisfied

with the result, at least, if the result of the investigation be such as not to lead to an order for a new trial." 2 *Story's Eq. Jur.*, sec. 1479, *a.*

The only controverted fact being settled by the verdict on the issues, it was the right and duty of the Court to decree according, to the evidence and the equity and right of the matter. The evidence being sufficient to sustain the decree, we find no error in the decree and proceedings appealed from, and therefore the same will be affirmed.

<div style="text-align:right">

*Decree affirmed and*
*cause remanded.*