644 A.2d 11

Laura Beth CARDINELL

v.

STATE of Maryland.

No. 32, Sept. Term, 1992.

Court of Appeals of Maryland.

July 14, 1994.

382

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender and Julia Doyle Bernhardt, Asst. Public Defender, both on brief), Baltimore, for petitioner.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI and BELL, JJ.

McAULIFFE, Judge.

This case involves two principal questions: did the trial judge have authority to reduce the defendant's sentence when he did; and if not, did the State have any right to appeal that action to the Court of Special Appeals? The first question is readily answered in the negative; under the facts of this case

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being· recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

the trial judge had no authority to modify the sentence. The second question is more difficult, and requires that we examine and trace a common law right of appeal of the State in criminal cases when the lower court acted without jurisdiction. It also requires that we consider the applicability of that doctrine to the facts of this case, and determine whether that right has been extinguished by the legislature.

## I.

Laura Beth Cardinell pled guilty in the Circuit Court for Garrett County to one count of distribution of cocaine and two counts of possession of cocaine. She was sentenced to imprisonment for a total of three years. She filed a timely motion for revision of sentence pursuant to Maryland Rule 4–345, and that motion was denied. Nearly seven months after sentence was imposed, the defendant filed a "supplemental" motion for revision of the sentence. This motion was granted on the day it was filed, and the trial judge ordered that execution of the unserved portion of the three-year sentence of imprisonment be suspended, and that the defendant be placed on supervised probation for three years. Two days later, the State, apparently unaware of the action taken by the court, filed an answer to the defendant's motion, arguing that the court had no jurisdiction to entertain or act on the motion.

The State filed a timely appeal to the Court of Special Appeals. That court held, among other things, that the trial judge acted without authority and therefore in excess of his jurisdiction, that the State was entitled to appeal, and that the trial court's order modifying the sentence must be vacated. *State v. Cardinell,* 90 Md.App. 453, 601 A.2d 1123 (1992). We granted the defendant's petition for certiorari to consider the two questions presented:

1. Whether the Court of Special Appeals erred in holding that the State had a right to appeal the lower court's order despite the clear language of [Maryland Code (1974, 1989 Repl.Vol.), Courts and Judicial Proceedings Article,] § 12–302(c)(2)?

2. Whether the Court of Special Appeals erred in holding that the trial court lacked revisory power over the sentence?

We address these questions in reverse order.

## II.

■ The lower court was clearly without authority to modify or reduce the defendant's sentence when it did so. The sequence of relevant events is as follows:

4 Oct 90  Sentence imposed.

27 Dec 90  Defendant's Motion for Revision of Sentence filed.

3 Jan 91  Order filed denying defendant's motion.

1 May 91  Defendant's "supplemental" motion for revision of sentence filed.

1 May 91  Order filed granting defendant's "supplemental" motion and reducing sentence.

Maryland Rule 4–345 provided,[1] in pertinent part, as follows:

(a) **Illegal Sentence.**—The court may correct an illegal sentence at any time.

(b) **Modification or Reduction—Time for.**—The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition ... in a circuit court, whether or not an appeal has been filed. The court may modify or reduce or strike, but may not increase

---

1. Effective January 1, 1993, Rule 4–345(b) was amended to read as follows:

(b) **Modification or Reduction—Time For.**—The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition (1) in the District Court, if an appeal has not been perfected, and (2) in a circuit court, whether or not an appeal has been filed. Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake, or irregularity, or as provided in section (d) of this Rule. The court may not increase a sentence after the sentence has been imposed, except that it may correct an evident mistake in the announcement of a sentence if the correction is made on the record before the defendant leaves the courtroom following the sentencing proceeding.

the length of, a sentence. Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake, or irregularity....

**(c) Open Court Hearing.**—The court may modify, reduce, or vacate a sentence only on the record in open court after notice to the parties and an opportunity to be heard.[2]

The defendant's first motion for modification of sentence was timely. That motion, however, was denied. At that point, and thereafter when the 90–day period following the imposition of sentence expired, no motion was pending. The so-called "supplemental" motion for modification was filed months later, and simply had no efficacy under the Rule.

The trial judge did not enjoy a common law or inherent right to reduce or modify the legal sentence he had imposed. A limited common law revisory power has, however, been recognized. As Judge Digges pointed out for this Court in *Ayre v. State*, 291 Md. 155, 433 A.2d 1150 (1981),

> "[i]n Maryland all judgments are under the control of the court during the term in which they are entered, and during that time the court has inherent power to strike out or modify judgments in both civil and criminal cases." *Madison v. State*, 205 Md. 425, 431, 109 A.2d 96, 99 (1954). In the absence of a statute or rule either modifying or rescinding this power, such authority survives.

*Id.* 291 Md. at 159–60, 433 A.2d 1150 (some citations omitted). *See also Christian v. State*, 309 Md. 114, 123, 522 A.2d 945 (1987) (acknowledging the common law doctrine that a court has plenary authority over its judgments and orders during the term in which they are entered).

Assuming, *arguendo*, that this revisory power extends to sentences imposed in criminal cases, and that it has not been

---

**2.** We note in passing that the trial judge did not comply with the requirements of section (c) of Rule 4–345. That omission, while not to be countenanced, is not the point we address. We are here concerned with the authority of the court to act, and not whether the court may have failed to follow procedural requirements that do not affect its jurisdiction.

supplanted by Rule 4–345,[3] the principle would not be applicable here because sentence was imposed in the September, 1990 term of court, which expired when the new term of court began on the second Monday in March, 1991.[4] The order reducing the sentence was not entered until May, 1991.

### III.

Having determined that the trial judge lacked the power to reduce this defendant's sentence when he did, we turn to the question of whether this Court is authorized to entertain the appeal noted by the State. Article IV, § 14 of the Constitution of Maryland provides in part that "[t]he jurisdiction of the Court of Appeals shall be co-extensive with the limits of the State and such as now is or may hereafter be prescribed by law." A part of the law of which that constitutional provision speaks is the common law as it existed in England and in this colony on the 4th day of July, 1776, and is not inconsistent with the constitution of the State or its new political institutions. *See* Declaration of Rights of Maryland, Article 5; *State v. Buchanan*, 5 H. & J. 317, 358 (1821).

A majority of the Court of Special Appeals' panel considering this case held that the appeal was permitted by statute, and in the alternative was permitted under the common law principle that an appellate court may entertain an appeal to review a contention that an inferior court acted in excess of its jurisdiction. *State v. Cardinell, supra,* 90 Md.App. at 460, 601 A.2d 1123. We do not agree that the statute is broad enough to authorize the State's appeal, but we do agree that the appeal will lie pursuant to common law principles that have not been abolished by the legislature.

---

**3.** *Cf.* In re Glenn S., 293 Md. 510, 514, 445 A.2d 1029 (1982) (suggesting that the civil rule dealing with revisory power of the court has supplanted the common law rule in civil cases).

**4.** *See* Maryland Rule 1206(*1*) (providing that in Garrett County the terms of court shall begin on the second Monday in March and September).

■ The statutory authority suggested by the State is § 12–302(c)(2) of the Courts and Proceedings Article, Md. Code (1974, 1989 Repl.Vol.). That section provides in pertinent part as follows:

(c) In a criminal case, the State may appeal as provided in this subsection.

      \*     \*     \*     \*     \*     \*

(2) The State may appeal from a final judgment if the State alleges that the trial judge failed to impose the sentence specifically mandated by the Code.

A majority of the Court of Special Appeals' panel reasoned that rules promulgated by this Court have the force of law,[5] that the trial judge acted outside the authority granted him by Maryland Rule 4–345(b), and that the modified sentence was therefore not authorized "by the Code." *State v. Cardinell, supra,* 90 Md.App. at 458–60, 601 A.2d 1123. This broad interpretation of the statute was adopted in the belief that "[t]he legislature must have intended that the State have a right to appeal under circumstances such as these where a trial court imposed a sentence that was contrary to law." *Id.* at 459, 601 A.2d 1123. Although we agree that the legislature did not intend by the enactment of this section of the statute to deprive the State of the important and long-standing common law right to appeal when a court has exceeded its power, we do not agree that the statute was intended to, or does, codify that right. Ordinarily, when the legislature speaks of the Code, it means the statutory law of the State. The more general term "law" encompasses much more, including the common law of the State and the rules of this Court that have the force of law. We think the legislature used the word "Code" in its ordinary signification in § 12–302(c)(2), and consequently that section does not authorize the State's appeal in this case.

The State does, however, enjoy a common law right to appeal under these circumstances. In *State v. Buchanan,*

---

5. *See* Maryland Constitution, Article IV, § 18(a).

*supra,* 5 H. & J. at 329–30, our predecessors noted that even in the absence of a statute,

> the King might have a writ of error in a criminal case; since it would be absurd to say that a man who had obtained a judgment of acquittal for a defect in the indictment, or on a special verdict, could never again be indicted for the same offense, until that judgment was reversed by writ of error, if a writ of error would not lie.

Pointing out that Attorney General Luther Martin had prosecuted writs of error on behalf of the State in various criminal cases tried in the Court of Oyer and Terminer, & c. for Baltimore County, the Court said:

> And there is no sufficient reason why the State should not be entitled to a writ of error in a criminal case. It is perhaps a right that should be seldom exercised, and never for the purpose of oppression, or without necessity; which can rarely, and it is supposed would never happen, and would not be tolerated by public feeling. But as the State has no interest in the punishment of an offender, except for the purpose of general justice connected with the public welfare, no such abuse is to be apprehended; and as the power of revision is calculated to produce a uniformity of decision, it is right and proper that the writ should lie for the State, in the same proportion as it is essential to the due administration of justice, that the criminal law of the land should be certain and known. . . .

*Id.* at 330. In *Rayner v. State,* 52 Md. 368 (1879), Judge Alvey said for the Court:

> It is only where the Circuit Court has proceeded without right or jurisdiction to hear and decide the case that an appeal or writ of error may be taken to this court to reverse the judgment thus unwarrantably rendered.

*Id.* at 374. Judge Alvey further stated:

> If the judgment of the court below had been rendered without power or jurisdiction to hear and decide the case; for instance, if the appeal had not been authorized by law, or if judgment had been rendered against the party in his

absence and without legal notice, or opportunity of defending himself or asserting his rights, or the court had, in the rendition of its judgment, transcended the limited jurisdiction conferred upon it; in all such cases the party prejudiced by the judgment would have had the right of appeal. In other words, there would have been a want of jurisdiction in the Circuit Court to render the judgment, and for that reason the right of review would exist.

*Id.* at 376.

By Chapter 506 of the Laws of 1892, the legislature provided that the parties to criminal proceedings were entitled to bills of exceptions in the same manner as in civil proceedings, and that appeals in criminal cases could be taken in the same manner as in civil cases. Judge Markell, writing for the Court in *State v. Adams,* 196 Md. 341, 347, 76 A.2d 575 (1950), noted that under the Act, an appeal "presents for review not only questions presented by bills of exceptions but also questions appearing on the face of the record, formerly reviewable only on writ of error."

In *State v. Fisher,* 204 Md. 307, 104 A.2d 403 (1954), the State challenged the authority of the trial judge to suspend a sentence. This Court said:

The [S]tate does not challenge the form of the suspension order; it contends that the Statute creating the misdemeanor stripped the court of all power to suspend the sentence, except on the conditions specified in the Statute itself. Since it appears on the face of the record that the statutory conditions were not met, the question of the legality of the suspension is jurisdictional.... While the State's right to appeal "as on" writ of error in Maryland has been chiefly recognized in cases where the indictment was quashed, we think the principle has a somewhat wider application, and appeal lies in the circumstances of the instant case.

*Id.* at 312, 104 A.2d 403.

Effective 1 January 1957, Maryland Rule 810 provided that the sole method of securing review by this Court was by appeal, except where certiorari may be permitted by law, and

that writs of error were abolished. A committee note to the Rule stated that writs of error had been abolished because they had fallen into disuse, and cited 2 John Prentiss Poe, *Pleading and Practice* § 821, at 782 (5th ed. Tiffany 1925) for the proposition that "there is no distinction in principle between writs of error and appeals." In *Liquor Board v. Handelman,* 212 Md. 152, 161, 129 A.2d 78 (1957), this Court said with respect to Rule 810 that "the views which led to its adoption make it clear that it effected no change in substance in the law as it previously existed with regard to the absence of any real difference between review on appeal and review as on writ of error."

In *State v. Jacob,* 234 Md. 452, 199 A.2d 803 (1964), the State's appeal challenged the authority of a trial magistrate to grant probation without verdict. The State had initially challenged the action by petition for writ of certiorari filed with a circuit court, and its appeal was from a denial of relief by that court. This Court held that the trial magistrate had no authority, and thus no jurisdiction, to grant probation without verdict. The Court further held that the jurisdiction of the trial magistrate was properly tested in the circuit court by certiorari, and that because the circuit court acted in its capacity as a common law court of original jurisdiction in ruling on that petition, the appeal from that court would lie. Significantly, the Court contrasted the lack of authority of the trial magistrate, which it characterized as jurisdictional, with a mere irregularity in the proceedings.

> No question is presented with regard to the jurisdiction of the trial magistrate to try the case; his power to dispose of it by probation without verdict is in issue, and this, we think, presents a question which is essentially one of jurisdiction, rather than of mere irregularity in the proceedings.

*Id.* at 458, 199 A.2d 803 (footnote omitted).

More recently, in *State ex rel. Sonner v. Shearin,* 272 Md. 502, 325 A.2d 573 (1974), the questions before the Court involved the power of a circuit court judge to suspend a sentence which the legislature had mandated should not be

suspended, and the right of the State to appeal. This Court, recognizing that "the authority to define and fix the punishment for crime is legislative," *Ex Parte United States,* 242 U.S. 27, 42, 37 S.Ct. 72, 61 L.Ed. 129 (1916), held that the trial judge had exceeded his authority. Concerning the right of the State to appeal, this Court said:

> [T]he holding in *Fisher,* considered in light of the language used in *Liquor Board v. Handelman, supra,* and the subsequent holding in *Jacob,* is authority for an appeal from the imposition of an illegal sentence, since the issue of the trial court's jurisdiction is involved in the sense of whether it exceeded the powers vested in it by prescribing a penalty contrary to law. A lower court which thus exceeds its power must be bridled by a court of last resort. Were it otherwise, mandates of the General Assembly could be defied with impunity and the only protection of the public would be the torturous process of judicial removal which would not have the effect of correcting the specific error.

*Sonner, supra,* 272 Md. at 526, 325 A.2d 573. It is clear, therefore, that at least up to the time of *Sonner,* the common law right of the State to appeal from an action of the lower court that was outside that court's jurisdiction remained intact.

The trial judge in the case before us had no inherent or common law authority, nor any authority by virtue of statute or rule, to reduce this defendant's sentence at the time he did so. The absence of authority or power in this case means that the trial judge acted without jurisdiction, as that term has been used in cases dealing with the State's right to appeal. *See, e.g., Rayner, supra,* 52 Md. at 376 (absence of power equated to absence of jurisdiction); *Fisher, supra,* 204 Md. at 312, 104 A.2d 403 (where legislature stripped trial judge of power to suspend sentence, legality of the suspension is jurisdictional); *Jacob, supra,* 234 Md. at 458, 199 A.2d 803 (power of magistrate to grant probation without verdict presents a question of jurisdiction rather than mere irregularity of proceedings); *Sonner, supra,* 272 Md. at 526, 325 A.2d 573 (stating that the "issue of the trial court's jurisdiction is

involved in the sense of whether it exceeded the powers vested in it"). In *Czaplinski v. Warden,* 196 Md. 654, 658, 75 A.2d 766 (1950), the Court stated:

> Where the sentence has been *decreased after* the term, the reported cases we have been able to find which discuss the point hold that this is also beyond the power of the court, generally upon the ground that when a sentence has been passed, and has become enrolled, the jurisdiction of the court is concluded and the court has no further authority.

(Emphasis in original).

Federal cases are in accord. Rule 4–345 is "virtually identical" to former Federal Rule of Criminal Procedure 35(b).[6] *Johnson v. State,* 274 Md. 29, 39, 333 A.2d 37 (1975). Our review of the cases considering that federal rule[7] and similar state rules modeled after the federal rule[8] indicates that the

---

**6.** For reasons not pertinent here, the federal rule was substantially amended in 1984, and the new version became effective on November 1, 1987. The earlier rule provided that a court could exercise revisory power over a sentence if a motion were filed within 120 days of imposition of sentence. Fed.R.Crim.P. 35 (1966).

**7.** The federal courts of appeals considering the issue have been unanimous in their conclusion that the time limit is jurisdictional. See *United States v. Hill,* 826 F.2d 507, 508 (7th Cir.1987); *United States v. Jackson,* 802 F.2d 712, 716–17 (4th Cir.1986), *cert. denied,* 480 U.S. 931, 107 S.Ct. 1568, 94 L.Ed.2d 760 (1987); *United States v. Ames,* 743 F.2d 46, 48 (1st Cir.1984), *cert. denied,* 469 U.S. 1165, 105 S.Ct. 927, 83 L.Ed.2d 938 (1985); *United States v. Blanton,* 739 F.2d 209, 213 (6th Cir.1984); *United States v. Rice,* 671 F.2d 455, 459 (11th Cir.1982); *United States v. Janovich,* 688 F.2d 1227, 1228 (9th Cir.), *cert. denied,* 459 U.S. 915, 103 S.Ct. 228, 74 L.Ed.2d 180 (1982); *United States v. Ferri,* 686 F.2d 147, 154 (3d Cir.1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983); *United States v. Colvin,* 644 F.2d 703, 704 (8th Cir.1981); *United States v. Counter,* 661 F.2d 374, 376 (5th Cir.1981); *United States v. Kahane,* 527 F.2d 491, 492 (2d Cir. 1975). The Supreme Court has expressed the same view in dictum. *See United States v. Addonizio,* 442 U.S. 178, 189, 99 S.Ct. 2235, 2242, 60 L.Ed.2d 805 (1979).

**8.** *See Alston v. United States,* 590 A.2d 511, 514 (D.C.1991); *State v. Parrish,* 110 Idaho 599, 600–01, 716 P.2d 1371, 1372–73 (1986); *State v. Saft,* 244 Kan. 517, 769 P.2d 675, 678 (1989); *State v. Letourneau,* 446 A.2d 746, 747–48 (R.I.1982); *State v. Therrien,* 140 Vt. 625, 442 A.2d 1299, 1301 (1982); *Stewart v. State,* 654 P.2d 727, 727 (Wyo.1982).

time limits encompassed therein are jurisdictional, and require dismissal if not observed. In 8A *Moore's Federal Practice* § 35.06[1] (2d Ed., 1992 Rev.), the author states:

> The Rule 35 requirement that motions to reduce sentence be filed within 120 days of the triggering events is a rigid limit on the jurisdiction of the district court to decide the motion.

Similarly, in 3 Charles A. Wright, *Federal Practice and Procedure* § 587, at 410 (2d ed. 1982) the author concludes:

> The time limits of Rule 35(b) are jurisdictional; if the motion is untimely under the rule and the sentence is a lawful one, the court is powerless to act.

(Footnote omitted).

We have examined and traced the limited but important common law right of appeal that has existed from the earliest days of this State through the time of *Sonner,* and we have determined that it is sufficiently broad to embrace the appeal taken in this case. We note that, although the right of appeal was originally to this Court, exclusive initial appellate jurisdiction in this type of case has been transferred to the Court of Special Appeals. *See* Maryland Code (1974, 1989 Repl.Vol.), Courts and Judicial Proceedings Article, § 12–308 (providing that "the Court of Special Appeals has exclusive initial appellate jurisdiction over any reviewable judgment, decree, order or other action of a circuit court ..." except for the limited jurisdiction reserved to this Court pursuant to § 12–307). We now turn then to the question of whether the legislature has, by any statute enacted since *Sonner,* abolished that right.

The statute that applied in *Sonner* was Md.Code (1957, 1968 Repl.Vol.), Art. 5, § 14. That section provided:

> The State may appeal to the Court of Special Appeals from a final order or judgment granting a motion to dismiss, or quashing or dismissing any indictment, information, presentment or inquisition in a criminal action, but the State shall have no right of appeal in any criminal action where the defendant has been tried and acquitted.

That statute, first enacted in this form by Chapter 399 of the Acts of 1957, defined certain instances when the State could appeal and expressly stated when the State could not appeal. This Court considered that statute in *Sonner* and said that "Art. 5, § 14 specified some instances in which there was a right of appeal by the State. It did not purport to limit the right of appeal." 272 Md. at 525, 325 A.2d 573.

As a part of the Code revision process, the laws governing appeals were recodified in the Courts and Judicial Proceedings Article, effective January 1, 1974. *See* Chapter 2, § 1, Acts of the First Extraordinary Session of 1973. Section 12–301 of the Courts Article granted general rights of appeal. Section 12–302(c) contained the following exception applicable to the State's right of appeal in a criminal case:

> In a criminal case, the [S]tate may appeal only from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition in a criminal case.

Md.Code (1974), Cts. & Jud.Proc. Art., § 12–302(c). There is no indication that the legislature intended to change the meaning of the law by this change in language. We have said repeatedly that

> [r]ecodification of statutes is presumed to be for the purpose of clarity rather than change of meaning. Thus, even a change in the phraseology of a statute by a codification will not ordinarily modify the law unless the change is so material that the intention of the General Assembly to modify the law appears unmistakably from the language of the Code.

*In re Special Investigation No. 236*, 295 Md. 573, 576–77, 458 A.2d 75 (1983). *See also Monumental Life Ins. Co. v. Trustees*, 322 Md. 442, 449, 588 A.2d 340 (1991); *State v. Burning Tree Club, Inc.*, 315 Md. 254, 265–66, 554 A.2d 366, *cert. denied*, 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989); *Nationwide v. USF & G*, 314 Md. 131, 147, 550 A.2d 69 (1988); *Rohrbaugh v. Estate of Stern*, 305 Md. 443, 449–50, 505 A.2d 113 (1986); *Consumer Protection v. Consumer Pub.*, 304 Md.

731, 768, 501 A.2d 48 (1985); *Duffy v. Conaway*, 295 Md. 242, 257–58, 455 A.2d 955 (1983). Moreover, the Revisor's Note to § 12–302(c) makes it clear that there was no intention to alter the substantive rights that existed under Art. 5, § 14. The Revisor's Note to § 12–302 explained briefly how the new statute differed from its predecessor:

REVISOR'S NOTE: Subsection (c) is essentially the language of Art. 5, § 14. The language proscribing an appeal by the State after an acquittal is omitted since the State may only appeal in the limited situations set forth in the section in any event.

Chapter 2, § 1, Acts of the First Extraordinary Session of 1973.

Thus, like its predecessor, § 12–302 should not be read as an absolute limitation on the State's right of appeal. Even the inclusion of the word "only" in the new statute cannot now mandate a reading of the statute as limiting, for that word was deleted by amendment in 1976. *See* Chapter 49 of the Laws of 1976. When the statute was amended again in 1982, the proposed bill once again included the word "only," but that word was deleted prior to enactment. *See* Chapter 493 of the Laws of 1982. Keeping in mind that we are bound to determine and enforce the intent of the legislature, *Jones v. State*, 311 Md. 398, 405, 535 A.2d 471 (1988), we think these facts indicate that the legislature enacted § 12–302 to codify the State's right of appeal in certain circumstances, but not to strip the State of rights already established by common law.

The 1976 amendment is also significant in that it articulated another instance in which the State may bring an appeal. The 1976 version read:

(c) In a criminal case, the State may appeal:

(1) From a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition; and

(2) From a final judgment if the State alleges that the trial judge failed to impose the sentence specifically mandated by the Code.

Md.Code (1974, 1976 Cum.Supp.), Cts. & Jud.Proc. Art., § 12–302. This change is consistent with the approach taken by the legislature whenever it has dealt with the State's right of appeal: spelling out specific instances when the State may appeal without abolishing the common law right to appeal when the lower court has acted outside its jurisdiction. Those provisions of the statute have remained essentially the same since 1976.[9] We see nothing to indicate a legislative intent, in either 1976 or 1982, to strip the State of the right to appeal recognized in *Fisher*. In fact, the language of the statute and its subsequent amendments indicate that it should not be construed as a limit on the State's right. Section 12–302(c), like its predecessor, Art. 5, § 14, lists instances where the State may appeal and may not appeal. What we said in *Sonner* about Art. 5, § 14 applies equally to § 12–302: "It did not purport to limit the right of appeal." 272 Md. at 525, 325 A.2d 573. That is not to say that § 12–302 should be used as a basis for finding new rights of appeal; we merely hold that § 12–302 did not operate to eliminate the State's long-standing and firmly established right of appeal from a final judgment involving action outside the jurisdiction of the lower court.

---

**9.** As mentioned above, the legislature amended the statute. again in 1982. At that time, it identified another circumstance in which the State has the right to appeal. The amended statute also contained minor language changes. It reads, in relevant part, as follows:

(c) In a criminal case, the State may appeal as provided in this subsection.

(1) The State may appeal from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition.

(2) The State may appeal from a final judgment if the State alleges that the trial judge failed to impose the sentence specifically mandated by the Code.

(3)(i) In a case involving a crime of violence as defined in § 643B of Article 27, the State may appeal from a decision of a trial court that excludes evidence offered by the State or requires the return of property alleged to have been seized in violation of the Constitution of the United States, the Constitution of Maryland, or the Maryland Declaration of Rights.

Md.Code (1974, 1980 Repl.Vol., 1982 Cum.Supp.), Cts. & Jud.Proc.Art., § 12–302.

In so holding, we acknowledge recent decisions in which this Court has entertained questions concerning the State's right of appeal.[10] *See Shilling v. State,* 320 Md. 288, 577 A.2d 83 (1990); *Telak v. State,* 315 Md. 568, 556 A.2d 225 (1989); *State v. Hannah,* 307 Md. 390, 514 A.2d 16 (1986). Those cases contain dicta that the statute " 'placed in serious question, if it did not completely eliminate, the State's right to appeal an illegal sentence as recognized in the earlier cases and reiterated in *Sonner.'* " *Telak, supra,* 315 Md. at 573, 556 A.2d 225 (*quoting Hannah, supra,* 307 Md. at 399, 514 A.2d 16). *See also Shilling, supra,* 320 Md. at 294, 577 A.2d 83. We now make clear that the State's limited common law right of appeal which we have described herein was not abolished by the enactment of § 12–302 or subsequent amendments thereto.

This Court has on many occasions, both civil[11] and criminal, recognized that there must be some effective means of curtailing a trial judge who has gone completely beyond the bounds of judicial authority. Judicial review applies, not just to correct legal errors, but to prevent the usurpation of power. The fact that post-*Sonner* legislation codified certain of the State's rights to appeal does not mean that it was intended to,

---

10. A word about the basis of those decisions is appropriate at this juncture. In *State v. Hannah,* 307 Md. 390, 514 A.2d 16 (1986) and *Shilling v. State,* 320 Md. 288, 577 A.2d 83 (1990), the State appealed the decision of the trial judge to impose probation before judgment despite a statutorily mandated sentence. Thus, both of those cases relied on § 12–302(c)(2) to find an express right of appeal in the statute. Although both discussed legislative intent with respect to the scope of the statute, neither was required to go beyond the statute.

Likewise, in *Telak v. State,* 315 Md. 568, 556 A.2d 225 (1989), we ruled based on the fact that the appeal was untimely. Our decision was based on *Hannah* to the extent that it found that the "final judgment" for purposes of appeal was the probation order, and not the later order denying the motion to correct an illegal sentence. Thus, *Telak* too was based on something other than the alleged exclusivity of § 12–302, and did not directly rule on the question presented here.

11. *See, e.g., Montgomery County v. McNeece,* 311 Md. 194, 198, 533 A.2d 671 (1987) ("[E]ven in the absence of a statute conferring the right to appeal, an appellate court may entertain an appeal to review a contention that an inferior appellate or trial court acted in excess of its jurisdiction.").

or did, abolish the right of appeal to challenge a judgment that was beyond the jurisdiction of an inferior court.

## IV.

### *Conclusion*

The trial judge had no authority or power to reduce a criminal sentence pursuant to a motion filed seven months after the imposition of sentence. This defect is not simply procedural, it is jurisdictional. The State has a continuing common law right to appeal an action that was outside the jurisdiction of the lower court, and this case was therefore properly before the Court of Special Appeals.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.*

ELDRIDGE, RODOWSKY and BELL, JJ., dissent.

ELDRIDGE, Judge, dissenting.

I agree with the majority that Code (1974, 1989 Repl.Vol.), § 12–302(c)(2) of the Courts and Judicial Proceedings Article, does not authorize the State's appeal in this case. I totally disagree with the majority's holding that "[t]he State does, however, enjoy a common law right to appeal under these circumstances." By finding a "common law right to appeal" under circumstances where the pertinent statutory provisions do not provide a right of appeal, the majority has overruled a multitude of Maryland cases and ignored settled legal principles. Moreover, neither Maryland history nor the cases relied on by the majority support the majority's position. The Court, in order to reach what it regards as a desirable result in a particular case, rides roughshod over more than 200 years of Maryland jurisprudence.

## I.

Numerous cases in this Court have firmly established the principle that, today, there is *no* common law right to appeal. Except as may be constitutionally authorized, the right of

appeal is entirely dependent upon statutes.[1] As Judge Smith for the Court recently stated, "[t]he right of appeal is wholly statutory. Therefore, the General Assembly must expressly grant such a right." *Howard County v. JJM, Inc.*, 301 Md. 256, 261, 482 A.2d 908, 910 (1984).

*State v. Bailey*, 289 Md. 143, 147, 422 A.2d 1021, 1024 (1980), was a criminal case in which the State sought to appeal, and Judge Cole for the Court stated:

> "We begin our consideration by recognizing that any right of appeal, in either a civil or criminal case, must find its source in an act of the legislature."

In *Jones v. State*, 298 Md. 634, 637, 471 A.2d 1055, 1057 (1984), this Court held:

> "Under Maryland law the State's right to appeal in a criminal case is limited; it may do so only when authorized by statute."

Because the State's appeal to the Court of Special Appeals in *Jones* had not been authorized by statute, we reversed the judgment of the Court of Special Appeals and instructed that court to dismiss the appeal.

Similarly in *Lohss and Sprenkle v. State*, 272 Md. 113, 116, 321 A.2d 534, 536–537 (1974), this Court directed the Court of Special Appeals to dismiss the State's appeal, saying in an opinion by Judge Levine:

---

1. The Maryland Constitution, in Article IV, § 22, does expressly authorize appeals to a "court in banc," although any additional right of appeal in such cases is limited to a losing appellee before the court in banc, and is limited to those cases in which an appeal "to the Court of Appeals may be allowed by Law." While the Constitution makes reference to appeals or appellate jurisdiction in other places, and confers certain original jurisdiction on the Court of Appeals, (Article II, § 6(g), Article III, § 5, and Art. IV, § 4B(b)), it does not explicitly confer a right to appeal in any other cases. Nevertheless, in one instance this Court has found a right to appeal "on the basis of our constitutionally created status as the final repository of judicial power in Maryland whose decisions are conclusive." *Washabaugh v. Washabaugh*, 285 Md. 393, 402, 404 A.2d 1027, 1032 (1979). *See also Ringgold's Case*, 1 Bland 5, 7 (1824). In the case at bar, the majority does not find a constitutional grant of authority for the State's appeal.

"Our consideration of the question presented here necessarily commences with a recognition of the principle that in Maryland, appellate jurisdiction is dependent upon a statutory grant of power, *Mace Produce v. State's Attorney*, 251 Md. 503, 508–09, 248 A.2d 346 (1968); *Subsequent Injury Fund v. Pack*, 250 Md. 306, 309, 242 A.2d 506 (1968); *Switkes v. John McShain*, 202 Md. 340, 343, 96 A.2d 617 (1953); *Johnson v. Board of Zoning Appeals*, 196 Md. 400, 406–07, 76 A.2d 736 (1950); *State v. North. Cent. Railway Co.*, 18 Md. 193, 210 (1862); *see Insurance Comm'r v. Allstate Ins.*, 268 Md. 428, 444–45, 302 A.2d 200 (1973); this is no less true, of course, in criminal cases, *State v. Denisio*, 21 Md.App. 159, 318 A.2d 559 (1974); *Neal v. State*, 20 Md.App. 20, 22, 314 A.2d 710 (1974); *State v. Mather*, 7 Md.App. 549, 552, 256 A.2d 532 (1969); *see State v. Adams*, 196 Md. 341, 351, 76 A.2d 575 (1950).

Other cases to the same effect include, *e.g.*, *Cubbage v. State*, 304 Md. 237, 241, 498 A.2d 632, 634 (1985) ("In Maryland, the right to appeal a criminal conviction is statutory ..."); *Estep v. Estep*, 285 Md. 416, 422, 404 A.2d 1040, 1043 (1979) ("It being established that the jurisdiction of the appellate courts of this State 'is at this time delimited by statute,' ... we look to the pertinent enactment to determine the scope of the court['s] ... basic authority to act"); *Smith v. Taylor*, 285 Md. 143, 146, 400 A.2d 1130, 1132 (1979) ("The basis of appellate review in this State in both civil and criminal cases is delineated by statute"); *Peat & Co. v. Los Angeles Rams*, 284 Md. 86, 90, 394 A.2d 801, 803 (1978) ("the appellate jurisdiction of the courts of this State in both civil actions and criminal causes is at this time delimited by statute"); *Jolley v. State*, 282 Md. 353, 355, 384 A.2d 91, 93 (1978) ("Appellate jurisdiction in both civil actions and criminal causes is dependent upon a statutory grant of power"); *Criminal Inj. Comp. Bd. v. Gould*, 273 Md. 486, 500, 331 A.2d 55, 64 (1975) ("An appellate right is entirely statutory in origin and no person or agency may prosecute such an appeal unless the right is conferred by statute"); *Mace Produce v. State's Attorney*, 251 Md. 503, 508, 248 A.2d 346, 350 (1968) ("'The right to take an appeal is

entirely statutory, and no person or agency may prosecute an appeal unless the right is given by statute,' " quoting *Subsequent Injury Fund v. Pack,* 250 Md. 306, 309, 242 A.2d 506, 509 (1968)); *Woodell v. State,* 223 Md. 89, 93, 162 A.2d 468, 471 (1960) ("the right of appeal is a creature of the statute"); *Johnson v. Board of Zoning Appeals,* 196 Md. 400, 406, 76 A.2d 736, 738 (1950) ("It is, of course, an accepted principle that the Court of Appeals will not entertain an appeal except when prescribed by law, and before it undertakes to review the proceedings of a subordinate tribunal, the authority must be shown"); *Amer. Bank Stationery Co. v. State,* 196 Md. 22, 28–29, 75 A.2d 86, 88 (1950) (" 'Where a statutory right of appeal is granted, that remedy is exclusive,' " quoting *Anne Arundel County v. Snyder,* 186 Md. 342, 348, 46 A.2d 689, 692 (1946)). *See also, e.g., State v. Anderson,* 320 Md. 17, 25, 575 A.2d 1227, 1231 (1990); *Harper v. State,* 312 Md. 396, 402–407, 540 A.2d 124, 127–129 (1988); *Clark v. Elza,* 286 Md. 208, 211–212, 406 A.2d 922, 924 (1979); *Eastgate Associates v. Apper,* 276 Md. 698, 700–701, 350 A.2d 661, 663 (1976); *Eisel v. Howell,* 220 Md. 584, 587, 155 A.2d 509, 511 (1959); *Switkes v. John McShain,* 202 Md. 340, 343–345, 96 A.2d 617, 618–620 (1953); *State v. Barshack,* 197 Md. 543, 80 A.2d 32 (1951); *State v. Rosen,* 181 Md. 167, 169, 28 A.2d 829, 829 (1942); *Brooks v. Sprague,* 157 Md. 160, 164, 145 A. 375, 377 (1929); *Hendrickson v. Standard Oil Co.,* 126 Md. 577, 581, 95 A. 153, 155 (1915); *Peoples v. Ault,* 117 Md. 631, 635, 84 A. 60, 61 (1912); *Dillon v. Conn. Mutual Life Ins. Co.,* 44 Md. 386, 394–395 (1876); *Barth v. Rosenfeld,* 36 Md. 604, 615 (1872).

The majority simply ignores all the above-cited cases and many others to the same effect. Nevertheless, innumerable cases in this Court clearly establish that a common law right of appeal does not exist.

In fact, the majority's recognition of a common law right of appeal, particularly in an area specifically addressed by the General Assembly, may well present constitutional problems. More than 100 years ago, in *Wylie v. Johnston, et al.,* 29 Md. 298 (1868), the appellant claimed that the circuit court, sitting in equity, had exceeded its authority by issuing an order

reopening a final decree, as against two appellees, allegedly after the term of court at which the decree was rendered had expired (29 Md. at 301). In dismissing the appeal on the ground that it was not authorized by the applicable statute, this Court initially pointed out (*id.* at 302):

> "The powers and duties of the Court of Appeals, are defined and limited. It cannot entertain appellate jurisdiction except when prescribed by the law. Where it undertakes to review the proceedings of subordinate tribunals, the authority must be shewn."

The Court went on to state that, if it were to entertain an appeal not authorized by statute, its decision would violate the constitutional separation of powers principle (*id.* at 303–304):

> "In regard to cases where appeals are allowed from Courts of Equity, the law from the Code to which we have adverted, very specifically defines the boundaries of our appellate jurisdiction. For this Court to extend it beyond that range, would be to invade the domain of the Legislative Department of the Government, and exercise its functions. It is not for us to go outside of the limits of legislation."

Moreover, the common law right of appeal recognized by the majority in this case is a right of appeal to the Court of Special Appeals. The Court of Special Appeals is an intermediate appellate court created pursuant to Article IV, § 14A, of the Maryland Constitution. That constitutional provision states as follows (emphasis added):

> "Section 14A. Creation of intermediate courts of appeal; prescribing jurisdiction and powers.

> "The General Assembly may by law create such intermediate courts of appeal, as may be necessary. The *General Assembly may prescribe the intermediate appellate jurisdiction of these courts of appeal,* and all other powers necessary for the operation of such courts."

Under the constitutional language, the appellate jurisdiction of the Court of Special Appeals would appear to be entirely

dependent upon what the General Assembly may prescribe.[2] We have indicated that the language of Article IV, § 14A, delimits the jurisdiction which may be conferred upon the Court of Special Appeals. *Shell Oil Co. v. Supervisor*, 276 Md. 36, 42, 343 A.2d 521–525 (1975). *See also Superintendent v. Zeserman*, 46 Md.App. 426, 429, 418 A.2d 1220, 1222 (1980) ("we do not have the power to review any case unless it is granted by the legislature"). To the extent that this Court might recognize any nonstatutory appellate jurisdiction to review circuit court judgments, such jurisdiction would not likely vest in the Court of Special Appeals. Instead, this Court's appellate jurisdiction would have to be invoked within the prescribed time after the circuit court's judgment or order from which the appeal was taken. *See Washabaugh v. Washabaugh*, 285 Md. 393, 402 n. 9, 404 A.2d 1027, 1032 n. 9 (1979). Unlike the appellant in *Washabaugh*, the State in the present case did not invoke this Court's jurisdiction within thirty days of the order appealed from.[3]

---

**2.** Compare the language of Article IV, § 14, of the Constitution, relating to the jurisdiction of this Court, and stating that "[t]he jurisdiction of the Court of Appeals shall be co-extensive with the limits of the State and such as now is or may hereafter be prescribed by law." Thus, while the Court of Special Appeals's jurisdiction is that prescribed by the "General Assembly," this Court's jurisdiction is as "prescribed by law."

**3.** The majority opinion suggests that jurisdiction over the common law right of appeal, which the majority today for the first time recognizes, was vested in the Court of Special Appeals by the General Assembly when it enacted Code (1974, 1989 Repl.Vol.), § 12–308 of the Courts and Judicial Proceedings Article. Section 12–308 states that "the Court of Special Appeals has exclusive initial appellate jurisdiction over any reviewable judgment, decree, order or other action of a circuit court...." The Revisor's Note to § 12–308, contained in the 1974 edition of the Courts and Judicial Proceedings Article, indicates that § 12–308 has reference to "other statutes dealing with the right to appeal." Therefore, it would have no application to a common law right of appeal. It seems obvious that the Legislature, when it spoke of a "reviewable judgment" in § 12–308, was not referring to a judgment which the Legislature in § 12–302 had determined was not appealable. Moreover, this Court in *Washabaugh v. Washabaugh*, 285 Md. 393, 402 n. 9, 404 A.2d 1027, 1032 n. 9 (1979), made no mention of § 12–308 when it indicated that an appeal from a circuit court, not authorized by statute, would have to be taken directly to this Court. Nevertheless, the

Regardless of what may have been the law at an earlier period in history with respect to appeals from the trial courts to this Court, it is now settled that the right to appeal from a circuit court to the Court of Special Appeals is wholly statutory. Since the Court holds that the State's appeal in this case did not fall within the statutory authorization, the Court of Special Appeals should be instructed to dismiss the appeal.

## II.

In addition to overruling the myriad of cases holding that the right of appeal is entirely dependent upon statutory authorization, the majority also overrules our recent opinions concerning the State's right to appeal in criminal cases under the present statutory provisions. The majority opinion is flatly inconsistent with our interpretation of those statutes in *Shilling v. State*, 320 Md. 288, 577 A.2d 83 (1990); *State v. Anderson, supra*, 320 Md. 17, 575 A.2d 1227; *Telak v. State*, 315 Md. 568, 556 A.2d 225 (1989); and *State v. Hannah*, 307 Md. 390, 514 A.2d 16 (1986).

The majority opinion today acknowledges some inconsistency with the opinions in *Shilling, Telak,* and *Hannah*, but the majority characterizes the pertinent portions of those opinions as "dicta." The portions of those opinions which undermine the majority's view today are not "dicta." Rather, they are integral parts of the holdings in those cases.

The starting point for any discussion of the present statutory provisions governing the State's right to appeal in a criminal case is *State ex rel. Sonner v. Shearin*, 272 Md. 502, 325 A.2d 573 (1974). *Sonner*, of course, did not concern the present statutory provisions but was decided under former Code (1957, 1968 Repl.Vol.), Art. 5, § 14.

---

*Washabaugh* Court was fully cognizant of § 12–308 at the time. On the same day that the *Washabaugh* opinion was filed, we filed *Estep v. Estep*, 285 Md. 416, 420 n. 4, 404 A.2d 1040, 1042–1043 n. 4 (1979), in which § 12–308 was discussed. Both *Washabaugh* and *Estep* were authored by Judge J. Dudley Digges.

As discussed in more detail in Part III of this opinion, prior to the enactment of former Art. 5, § 14, by Ch. 399 of the Acts of 1957, the pertinent statute literally gave *all* parties in a criminal case a broad right of appeal. Code (1951), Art. 5, § 86, thus stated in relevant part as follows:

"The parties to criminal proceedings shall be entitled to bills of exceptions in the same manner as in civil proceedings, and appeals from judgments in criminal cases may be taken in the same manner as in civil cases...."

The statutory language clearly encompassed an appeal by the State challenging an illegal sentence, and this Court had held in *State v. Fisher*, 204 Md. 307, 311–312, 104 A.2d 403, 404–405 (1954), that such an appeal would lie. Nevertheless, Ch. 399, § 4, of the Acts of 1957 repealed all of former Article 5 of the Code, including the broad general right of "the parties" to appeal in criminal cases. Ch. 399, § 4, enacted a new section (Art. 5, § 12) containing a broad general right to appeal in criminal cases which was limited to appeals by defendants. Ch. 399, § 4, also enacted a new Art. 5, § 14, which read as follows:

"14. Right Of Appeal By State.

"The State may appeal to the Court of Appeals from a final order or judgment granting a motion to dismiss, or quashing or dismissing any indictment, information, presentment or inquisition in a criminal action, but the State shall have no right of appeal in any criminal action where the defendant has been tried and acquitted."

The right of appeal issue in *State ex rel. Sonner v. Shearin, supra*, 272 Md. at 520–526, 325 A.2d at 583–586, was whether Ch. 399 of the Acts of 1957 was intended to change the prior law under which the State had a right to appeal from an illegal sentence. The trial court in *Sonner* had refused to impose the sentence mandated by the Code, and thus the sentence there imposed was illegal. This Court, examining the cases and the legislative history, particularly with reference to a Rules Committee discussion of the proposed new Art. 5, § 14, *see* 272 Md. at 522–523, 325 A.2d at 584–585, concluded that the 1957

statute was not intended to abolish the State's right to appeal from an illegal sentence. Furthermore, the Court in *Sonner* held that the State could file in the circuit court a motion to correct an illegal sentence, and could file a timely appeal from the circuit court's ruling on that motion.

The majority opinion today states that *Sonner* left "intact" the "common law right of the State to appeal from an action of the lower court that was outside that court's jurisdiction...." The portion of the *Sonner* opinion dealing with the right of appeal, 272 Md. at 520–526, 325 A.2d at 583–586, at no time refers to a "common law right of appeal." [4] As recognized by this Court in subsequent cases, the holding in *Sonner* was based upon an interpretation of Code (1957), Art. 5, § 14. *See Shilling v. State, supra*, 320 Md. at 294, 577 A.2d at 86 (stating that "the State's right of appeal, as authorized by Art. 5, § 14, permitted an appeal by the State from the imposition of an illegal sentence ... as documented in *Sonner*"); *Telak v. State, supra*, 315 Md. at 571–572, 556 A.2d at 226–227 (pointing out that "[t]he provisions of Art. 5, § 14, were construed by the Court in *State ex rel. Sonner v. Shearin*" and that the holding in *Sonner* was "that Art. 5, § 14, ... permitted 'an appeal from the imposition of an illegal sentence ...'"); *State v. Hannah, supra*, 307 Md. at 398, 514 A.2d at 20 (observing that *Sonner* "concluded that the statutes relating to appeals which were in effect at the time applicable in *Sonner* ... had not limited the State's" right to appeal an illegal sentence but that "*Sonner* left open the interpretation of the then provisions of CJ §§ 12–301 and 12–302 dealing generally with appeals from circuit courts").

Although Ch. 399 of the Acts of 1957, as construed in *Sonner*, did not restrict the State's right to appeal from an illegal sentence, the General Assembly clearly limited that right when it enacted the Courts and Judicial Proceedings

---

4. Except for an historical reference in a footnote and a reference in a quotation to a circuit court as a "common law court of original jurisdiction," the pertinent portion of the *Sonner* opinion does not even use the phrase "common law."

Article effective January 1, 1974, and when it enacted Ch. 49 of the Acts of 1976.

As we pointed out in *Telak v. State, supra,* 315 Md. at 572–573, 556 A.2d at 227,

> "[w]ith regard to circuit court criminal cases, ... § 12–302(c) of the Courts and Judicial Proceedings Article, as originally enacted, did depart from former Art. 5, § 14. Section 12–302(c) provided: 'In a criminal case, the state may appeal *only* from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition in a criminal case.' (Emphasis added)."

The Revisor's Note to § 12–302(c), referring to the omission of certain language from former Art. 5, § 14, stated that "the state may only appeal in the limited situations set forth in the section...." The enactment of the original § 12–302(c), as pointed out for the Court by Judge Rodowsky in *State v. Hannah, supra,* 307 Md. at 399, 514 A.2d at 20, "placed in serious question, if it did not completely eliminate, the State's right to appeal an illegal sentence as recognized in the earlier cases and reiterated in *Sonner.*" Later, in *Shilling v. State, supra,* 320 Md. at 294, 577 A.2d at 86, in an opinion by Judge Cole, we flatly took the position that "[s]ection 12–302, as originally enacted, departed from Art. 5, § 14 by virtually eliminating the State's right to appeal an illegal sentence as documented in *Sonner.*" [5]

---

5. The majority opinion in the case at bar, in arguing that the enactment of § 12–302(c), effective January 1, 1974, did not change the right of the State to appeal an illegal sentence, invokes the general rule of statutory construction that recodification of statutes is presumed to be for the purpose of clarity rather than change of meaning, and that a change in phraseology of a statute by recodification will not "ordinarily" modify the law. Of course, the rule set forth by the majority recognizes that sometimes the recodification process does result in a change in the law. For example, the enactment of § 12–301 of the Courts and Judicial Proceedings Article changed the law with respect to the right of appeal when a circuit court was exercising a special limited statutory jurisdiction. *See* the discussion in *Litton Bionetics v. Glen Construction Co.,* 292 Md. 34, 39–42, 437 A.2d 208, 211–212 (1981). Moreover, sometimes a change in statutory language as a result of

The critical statutory change, for purposes of the issue in this case, was brought about by Ch. 49 of the Acts of 1976. In obvious response to the *Sonner* case and the very restrictive language in § 12–302(c) of the Courts and Judicial Proceedings Article, and for the purpose of authorizing a State appeal when a trial judge failed to impose a sentence specifically mandated by statute (which is what actually happened in *Sonner*), Ch. 49 enacted new § 12–302(c)(2) which authorized the State to appeal in a criminal case

"(2) From a final judgment if the State alleges that the trial judge failed to impose the sentence specifically mandated by the Code."

The majority opinion states that nothing in the original Courts and Judicial Proceedings Article or in Ch. 49 of the Acts of 1976 was intended to change the law concerning the State's right to appeal an illegal sentence which had been recognized in *Sonner* and earlier cases. Section 2 of Ch. 49 of the Acts of 1976, however, stated as follows:

"SECTION 2. AND BE IT FURTHER ENACTED, That this Act shall be construed only prospectively and may not be applied or interpreted to have any effect upon or application to any event or happening occurring prior to the effective date of this Act."

The Title of Ch. 49 read as follows:

"FOR the purpose of extending the right of the State to appeal in certain criminal cases; and giving the extension only prospective effect."

Obviously the General Assembly believed that the original § 12–302(c) as well as Ch. 49 changed the law. Otherwise, there would have been no need for section 2 of Ch. 49. Moreover, the Title shows a legislative intent to extend the

recodification will be construed to change the law even in the absence of a revisor or recodifier calling attention to the specific change. *See, e.g., Covington v. Gernert,* 280 Md. 322, 323–325, 373 A.2d 624, 624–625 (1977), and *Dean v. Redmiles,* 280 Md. 137, 161–162 n. 4, 374 A.2d 329, 342–343 n. 4 (1977), dealing with a change in the law resulting from a recodification of the Motor Vehicle Code.

State's right of appeal to the situation where the trial judge failed to impose a sentence specifically mandated by the Code. This reflects the General Assembly's position that, as a result of the enactment of the original Courts and Judicial Proceedings Article, the State had no right to appeal an illegal sentence, even if the illegality was of the type involved in *Sonner*. The majority's view of the law simply cannot be reconciled with the Title and language of Ch. 49 of the Acts of 1976.

The majority's view also violates the principle that, where a statute expressly allows a particular action under specified circumstances, it is a reasonable inference that the legislature intended not to allow the action under other circumstances. *See, e.g., Mossburg v. Montgomery County, Md.*, 329 Md. 494, 505–506, 620 A.2d 886, 892 (1993); *Office & Prof. Employees Int'l v. MTA*, 295 Md. 88, 96, 453 A.2d 1191, 1195 (1982); *Montgomery v. State*, 292 Md. 155, 162–163, 438 A.2d 490, 493 (1981); *In re Appeal No. 653*, 277 Md. 212, 218, 352 A.2d 845, 849 (1976). By allowing the State to appeal an illegal sentence under specified circumstances, the Legislature obviously intended to preclude a State appeal of an illegal sentence if those circumstances were not present. Otherwise, the language of § 12–302(c)(2) would have no purpose.

Our cases since the enactment of the Courts and Judicial Proceedings Article and Ch. 49 of the Acts of 1976 have made it clear that the State does not have the same broad right to appeal from a circuit court illegal sentence which was recognized in *Sonner*, and that the State's right is limited to the situation where the trial judge failed to impose a sentence specifically mandated by the Code. Thus, in *State v. Hannah, supra*, the two determinative issues were whether the State's appeal was from a final judgment and whether the trial judge had failed to impose a sentence specifically mandated by the Code. We initially pointed out, 307 Md. at 399–400, 514 A.2d at 20, that the State's right of appeal was dependent upon Ch. 49 of the Acts of 1976. We went on to hold that the trial judge's imposition of probation before judgment, for the particular violation of the Handgun Act of 1972 there involved,

constituted a failure to impose the five-year minimum sentence mandated by the Code, 307 Md. at 402–403, 514 A.2d at 22. If we had believed in *Hannah* that the State had a right to appeal any illegal sentence, it would have been entirely unnecessary to determine whether there had been a failure to impose a sentence specifically mandated by the Code.

In *Telak v. State, supra,* the trial judge had imposed an illegal sentence, and the State, like it did in *Sonner,* filed a motion to correct the illegal sentence. Thereafter the trial judge denied the motion. As in *Sonner,* the State took a timely appeal from the denial of its motion to correct the illegal sentence, although, again as in *Sonner,* the State's appeal was not within 30 days of the trial court's original judgment. The State's argument in *Telak* was essentially the same as the majority's position in the case at bar, namely that "the State [was] in the same position that it [was] under the *Sonner* decision," 315 Md. at 574, 556 A.2d at 228. The *Telak* opinion went on to point out that "[t]he State asserts:

'The State enjoys the same right to appeal an illegal sentence that it had under the controlling law in *Sonner*' (respondent's brief, pp. 12–13)." *Ibid.*

In rejecting this argument, and directing that the intermediate appellate court dismiss the State's appeal, we held in *Telak* as follows (315 Md. at 574–575, 556 A.2d 225):

"Moreover, the language of the *Sonner* and earlier opinions would authorize the State to appeal where there was an 'illegal' sentence. Ch. 49, however, specifies the type of illegality which must be alleged for the State to be entitled to appeal.

"Ch. 49 of the Acts of 1976 also did not embody the procedure which was deemed permissible in *Sonner.* Although *Sonner* had taken the position that the State's right to appeal stemmed from Art. 5, § 14, and predecessor statutes, the *Sonner* opinion also indicated that the appealable judgment was the order denying the motion to correct the sentence, and that the thirty-day period for filing a notice of appeal ran from that order. Under the language

added to the Courts and Judicial Proceedings Article by Ch. 49 of the Acts of 1976, however, the appeal clearly is to be taken from the trial court's order, after the verdict, which imposes a sanction in the criminal case...."

In *Shilling v. State, supra,* 320 Md. at 293–296, 577 A.2d at 85–87, we held that the State was entitled to maintain an appeal because, and only because, the trial judge had failed to impose the sentence specifically mandated by statute. We made it clear that, "although *Sonner* and earlier cases would have allowed the State a right of appeal where there was an 'illegal' sentence, the enactment of § 12–302(c)(2) seeks to specify that the State may appeal when the trial court does not impose a sentence the legislature has clearly mandated." 320 Md. at 294, 577 A.2d at 86. *See also State v. Anderson, supra,* 320 Md. at 25, 575 A.2d at 1231 ("The State's right of appeal is conferred by § 12–301 [of the Courts and Judicial Proceedings Article]. It is then limited by all of the exceptions set forth in § 12–302").

Since the State's appeal in this case was not authorized by §§ 12–301 and 12–302 of the Courts and Judicial Proceedings Article, the above-discussed cases require the dismissal of the appeal.

## III.

In finding a common law right to appeal in this case, the majority reaches back into history, and particularly to *The State v. Buchanan et al.,* 5 H. & J. 317 (1821). Of course, even if a Maryland common law right of appeal had existed at the time of the *Buchanan* case, it is clear that today the right is entirely statutory and that the relevant statutes do not authorize the present appeal by the State. Nonetheless, the history of the right to appeal in Maryland furnishes little or no support for a nonstatutory basis of appeal. In reviewing the history, one does not find, as suggested by the majority opinion, a recognition of a common law right of appeal in situations where the statutory language failed to provide for an appeal. Rather, one finds broad statutory language autho-

rizing appeals and judicial decisions which often construe the statutes narrowly.

At a very early period in the English common law, a right of appellate review upon writ of error appears to have been recognized in civil actions at law. In the fifteenth century, if not earlier, however, the matter of appeal was provided for and regulated by statutes. In Maryland, as early as Ch. 6 of the Acts of 1642, the regulation of appeals was statutory. For a detailed discussion of the history of statutes authorizing appeals in England and Maryland, *see* Chancellor Bland's opinion in *Ringgold's Case,* 1 Bland 5, 7–28 (1824). Another excellent discussion of the early Maryland history is contained in Carroll T. Bond, *The Court of Appeals of Maryland,* 5–57 (1928).

The statute during the colonial period most often referred to is Ch. 4 of the Acts of 1713, which related to appeals and writs of error from judgments of the Provincial Court and county courts, and, after setting forth certain procedural requirements, broadly provided in § 5 "[t]hat all appeals made in manner aforesaid shall be admitted and allowed by the superior courts to whom such appeal shall be made, as aforesaid, in nature of a writ of error...." A series of statutes shortly thereafter authorized appeals from the Court of Chancery. *See Ringgold's Case, supra,* 1 Bland at 13. *See also Thompson v. M'Kim,* 6 H. & J. 302, 330 (1825). After the Revolution, Ch. 87 of the Acts of 1785, § 6, broadly granted the "full power and right to appeal" to "any party or parties aggrieved by any judgment or determination of any county court in any civil suit or action, *or any prosecution for the recovery of any penalty,* [or] fine...." (Emphasis added).

The early history of the right of appeal in criminal cases is somewhat obscure. The only reported pre-Revolutionary War case is apparently *Jenifer v. Lord Proprietary,* 1 H. & McH. 535 (Provincial Court 1774). Daniel Jenifer, the former Sheriff of Charles County, was convicted of receiving unlawful fees as sheriff and was fined the value of the fees plus 5,000 pounds of tobacco. He appealed to the Provincial Court, which heard

argument at its April 1770 term. Attorney General Jennings argued that the case should be dismissed, as no appeal was allowed under either the English statutes or the common law or the Act of 1713. *See* 1 H. & McH. at 536–538. Thomas Stone, later a signer of the Declaration of Independence, representing the appellant, argued that "[a] writ of error lies in all cases except in treason or felony," and that under the Act of 1713, "an appeal will lie whenever a writ of error lies." *See* 1 H. & McH. at 538. Samuel Chase, also later a signer of the Declaration of Independence as well as Chief Judge of the General Court and a justice of the United States Supreme Court, argued that a writ of error was proper in all criminal cases but not an appeal, 1 H. & McH. at 539. The Court continued the case until its September 1774 term and then dismissed the appeal, apparently holding that no appeal would lie. *Ibid.*

The first reported criminal appeal after the Act of 1785 seems to be *Peter v. The State*, 4 H. & McH. 3 (General Court 1797), where the General Court entertained an appeal by the defendant, on writ of error, with the defendant contending that the indictment on its face violated a statute. The Court, without opinion, apparently agreed that the writ of error would lie and that the defendant's argument was sound, and it reversed the judgment of the county court. A few years later, in *Cummings v. The State*, 1 H. & J. 340 (General Court 1802), the availability of a writ of error in a criminal case was again argued before the General Court, but the writ was quashed on a procedural ground.

The first discussion of the issue in a reported opinion by this Court was in *Queen v. The State*, 5 H. & J. 232 (June Term 1821), where the Court held that an appeal or writ of error was authorized in a criminal case to review a question of law apparent on the record but that a bill of exceptions was not authorized. The Court based these holdings squarely upon the Act of 1785, saying that "[t]he Act of 1785 does not give a bill of exceptions in the criminal cases there enumerated," but that, "if error appeared on the record," then "the Legislature

gave the party complaining an election to carry up the case either by writ of error or appeal...." 5 H. & J. at 234.

Later at its December 1821 term, this Court in *The State v. Buchanan et al., supra,* 5 H. & J. at 329–330, held that a writ of error in a criminal case would lie at the instance of the State where the county court had quashed the indictment. The majority opinion in the present case cites *Buchanan* as its principal authority for a "common law right to appeal." Nothing in the *Buchanan* opinion however, suggests that the appeal in that case was not authorized by statute; in fact, the Court at no time refers to the common law as the basis for the appeal. As *Buchanan* was decided several months after *Queen v. The State, supra,* the source of the right of appeal recognized in *Buchanan* would seem to be the Act of 1785. Moreover, the *Buchanan* opinion also specifically relied on the Act of 1713. *See* 5 H. & J. at 331. *But cf. Isaac v. Clarke,* 9 G. & J. 107 (1837) (stating that the Act of 1713 applies to civil cases only). While the *Buchanan* opinion did cite some English authorities and unreported General Court cases, the purpose of such citations apparently was to counter the defendant's common law double jeopardy argument and the defendant's attempt to draw a distinction between appeals by the State and appeals by the defendant. The Act of 1785, however, drew no such distinction.

The broad right of appeal set forth in the Act of 1785 was continued in later statutes. For example, Code (1860), Art. 5, § 3, authorized "any party" to appeal to the Court of Appeals in, *inter alia,* "any prosecution for the recovery of any penalty [or] fine," and § 4 stated that "writs of error may be sued out in civil or criminal cases...." Ch. 316 of the Acts of 1872 added a new section to Article 5 of the Code, which provided as follows:

> "In all trials upon any indictment or presentment in any court of this State having criminal jurisdiction, it shall be lawful for any party accused, or for the State's Attorney, in behalf of the State of Maryland, to except to any ruling or determination of the court, and to tender to the court a bill of exceptions, which shall be signed and sealed by the court

. . .; and the party tendering such bill of exceptions, may appeal from such ruling or determination to the Court of Appeals. . . ."

A broad general right of appeal in criminal cases, by both defendants and the State, continued to be statutorily provided for until 1957. *See, e.g.,* Code (1888), Art. 5, §§ 77 and 78; Code (1924), Art. 5, §§ 86 and 87; Code (1939), Art. 5, §§ 86–88; Code (1951), Art. 5, §§ 86–89.

Consequently, when the Court in a few criminal cases, such as *State v. Fisher, supra,* 204 Md. 307, 104 A.2d 403, relied on by the majority in the present case, upheld the right of the State to appeal, it was clearly a right conferred by statute. None of the cases relied on by the majority supports a common law right of appeal independent of statute. As previously mentioned, the general tendency of the decisions was to preclude a right to appeal by the State in criminal cases despite statutory language which literally seemed to authorize an appeal. *See, e.g., State v. Adams,* 196 Md. 341, 76 A.2d 575 (1950); *State v. Lingner,* 183 Md. 158, 36 A.2d 674 (1944); *State v. Jones,* 182 Md. 368, 34 A.2d 775 (1943); *State v. Rosen, supra,* 181 Md. 167, 28 A.2d 829; *State v. Shields,* 49 Md. 301 (1878).

## IV.

Finally, in asserting that there is a "common law right," independent of statute, "to appeal from an action of the lower court that was outside that court's jurisdiction," the majority opinion quotes selected portions of Judge Alvey's opinion for the Court in *Rayner v. State,* 52 Md. 368 (1879). The majority opinion also quotes from Judge McAuliffe's opinion for the Court in *Montgomery County v. McNeece,* 311 Md. 194, 198–199, 533 A.2d 671 (1987), to the effect that, even absent statute, an appellate court may entertain an appeal where it is contended that a lower court acted in excess of its jurisdiction. The entire passage from the *McNeece* opinion is as follows (311 Md. at 198–199, 533 A.2d at 673):

"It is true that even in the absence of a statute conferring the right to appeal, an appellate court may entertain an appeal to review a contention that an inferior appellate or trial court acted in excess of its jurisdiction. *Pr. Geo's Co. v. American Federation,* 289 Md. 388, 398, 424 A.2d 770 (1981); *Urbana Civic v. Urbana Mobile,* 260 Md. 458, 272 A.2d 628 (1971); *Bd. of Med. Examiners v. Steward,* 203 Md. 574, 580, 102 A.2d 248 (1954); *Darrell v. Biscoe,* 94 Md. 684, 687, 51 A. 410 (1902); *Webster v. Cockey,* 9 Gill 92, 98 (1850).

'It is a well settled rule that the Court of Appeals cannot entertain an appeal from any order or judgment of the Circuit Court sitting as an appellate tribunal under special statutory authority where no right of appeal is expressly given, except in cases where the Court exceeded its jurisdiction.' *Bd. of Med. Examiners v. Steward, supra,* 203 Md. at 580, 102 A.2d 248."

An examination of the *Rayner* case and the cases cited in *McNeece,* as well as similar cases, discloses that there is no "common law" right to appeal whenever a lower court acts in excess of its jurisdiction. Instead, the principle set forth in those cases was entirely a matter of statutory construction.

The *Rayner* case, the above-quoted passage from *Bd. of Med. Examiners v. Steward,* 203 Md. 574, 580, 102 A.2d 248, 251 (1954), contained in the *McNeece* opinion, and the other cases cited above in the passage from *McNeece,* all involved a rule which was created by this Court in the early nineteenth century. The rule was as follows: When a circuit court (or its predecessor) was exercising a special limited statutory jurisdiction, and not its ordinary common law-type jurisdiction, and when the court acted within that statutory jurisdiction, no further appeal would lie, but when the court went outside of or in excess of the special statutory jurisdiction, an appeal could be taken.

Apparently this Court's earliest discussion of the rule was in *Wil. & Susq. R.R. Co. v. Condon,* 8 G. & J. 443, 448–449 (1837), where the rule was applied to dismiss an appeal from a

county court judgment reviewing a jury inquisition concerning the value of lands condemned for use by a railroad. The Court there stated (8 G. & J. at 448):

"There is no appeal expressly given to the Court of Appeals, under the Act of Assembly, investing the County Court with the power of reviewing and confirming, or setting aside inquisitions like the present. From the nature and course of their proceedings, this power of review is a fit subject for litigation in a County Court, but is wholly inappropriate to the jurisdiction of this Court. It is a special limited jurisdiction given to the County Court, from the decision of which no appeal lies to any other tribunal."

The rule was applied to the judgment of a county court exercising statutory jurisdiction to open a road in *Savage Manufacturing Co. v. Owings*, 3 Gill 497, 499 (1846) ("It is a general and sound rule, that a writ of error will not lie to a Court vested with a special jurisdiction, and which does not proceed according to the forms of the common law"). The same rule was applied to judgments of the county courts and the circuit courts reviewing decisions of justices of the peace, *Crockett v. Parke*, 7 Gill 237 (1848); *State v. Mister*, 5 Md. 11, 15 (1853); *Hough v. Kelsey & Gray*, 19 Md. 451 (1863); *Herzberg v. Adams*, 39 Md. 309 (1874); to a judgment of the Baltimore City Court reviewing a judgment of the People's Court of Baltimore City, *Montgomery Ward v. Herrmann*, 190 Md. 405, 408–411, 58 A.2d 677, 678–680 (1948); to judgments of the county courts and the circuit courts reviewing decisions of local government officials, *Webster v. Cockey*, 9 Gill 92 (1850); *Co. Commrs. Harford Co. v. Jay*, 122 Md. 324, 89 A. 715 (1914); *Stephens v. M. & C. of Crisfield*, 122 Md. 190, 192–193, 89 A. 429, 429–430 (1914); to certain decisions of orphans courts, *Lammott v. Maulsby*, 8 Md. 5 (1855); to trial court judgments on judicial review of administrative agency decisions, *Simpler v. Boyd*, 223 Md. 456, 460–461, 165 A.2d 464, 466 (1960); *Johnson v. Board of Zoning Appeals, supra*, 196 Md. at 406–407, 76 A.2d at 738; and to other types of circuit court decisions rendered pursuant to a special statutory jurisdiction. *See Sugar v. North Balto. M.E. Church*, 164 Md.

487, 498–500, 165 A. 703, 707–708 (1933), collecting many types of such cases.

The basis for this special jurisdiction rule was one of statutory construction. As previously discussed, Ch. 87 of the Acts of 1785 broadly stated

"That any party or parties aggrieved by any judgment or determination of any County Court, in any civil suit or action, or any prosecution for the recovery of any penalty, fine or damages, shall have full power and right to appeal from such judgment or determination to the General Court."

Upon the abolition of the General Court, its appellate jurisdiction was transferred to the Court of Appeals, Ch. 55 of the Acts of 1804. In *Crockett v. Parke, supra,* 7 Gill at 239–240, involving an attempted appeal to the Court of Appeals from a judgment of a county court reviewing a decision of a justice of the peace, this Court acknowledged that literally the appeal was authorized by the statute, but the Court held that, because of prior judicial decisions, the 1785 act would not be construed to authorize the appeal. Chief Judge Dorsey for the Court, after quoting Ch. 87 of the Acts of 1785, stated (7 Gill at 239–240):

"Literally to interpret this Act of Assembly, ... the right of appeal exists from all judgments or determinations in civil actions of a County Court.... And yet from the passage of the Act ... down to the present day, its judicial interpretation has denied, in such cases, the existence of the right of appeal. So also a like denial to the appellate power of this Court, has again and again been pronounced by this Court, on appeals brought before it from the judgments of County Courts on appeals from the judgments of justices of the peace, rendered under the Acts of Assembly for the speedy recovery of small debts. And a principle, equally decisive against the right of appeal in the case before us, and against the literal construction of the Act of 1785, was adjudicated by the Court of Appeals, in the case of the *Wilmington and Susquehanna Railroad Company vs. Condon,* 8 G. & J. 443,

and in the case of *The Savage Manufacturing Company vs. Owings,* 3 Gill [at], 498."

From the early cases through more recent times, the rule concerning appeals in cases where the circuit courts were acting within a special limited statutory jurisdiction was based upon a construction of the general statute authorizing appeals. None of these special jurisdiction cases, to the best of my knowledge, ever referred to the rule as a "common law" principle. Thus in *Johnson v. Board of Zoning Appeals, supra,* 196 Md. at 406–407, 76 A.2d at 738, one of the cases relied upon in the *McNeece* opinion, this Court again explained that the rule was a result of statutory construction, stating:

"It is, of course, an accepted principle that the Court of Appeals will not entertain an appeal except when prescribed by law, and before it undertakes to review the proceedings of a subordinate tribunal, the authority must be shown. The general statute authorizing appeals from courts of law provides: 'From any judgment or determination of any court of law in any civil suit or action or in any prosecution for the recovery of any penalty or fine or damages, any party may appeal to the Court of Appeals * * *.' Code 1939, art. 5, sec. 2. We construe this statute to mean that an appeal can be taken from any judgment or determination of a court of law entered in an action originating therein, but an appeal cannot be taken from a decision of the court when sitting as an appellate tribunal or when exercising a special statutory jurisdiction, unless an appeal is authorized by statute. *Crockett v. Parke,* 7 Gill 237, 240; *Baltimore & Havre de Grace Turnpike Co. v. Northern Central Ry. Co.,* 15 Md. 193; *Stephens v. City of Crisfield,* 122 Md. 190, 89 A. 429; *Board of County Com'rs of Harford County v. Jay,* 122 Md. 324, 327, 89 A. 715; *Montgomery Ward & Co. v. Herrmann,* 190 Md. 405, 58 A.2d 677; *Berlinsky v. Eisenberg,* 190 Md. 636, 59 A.2d 327; *Robb v. State,* 190 Md. 641, 60 A.2d 211.

"So, we specifically hold that no right of appeal exists to review a decision of the Circuit Court sitting as an appellate

court in a zoning case, unless the Legislature has authorized an appeal."

*See also, e.g., Md. Pharmacy Board v. Peco,* 234 Md. 200, 202, 198 A.2d 273, 274 (1964) ("It is well settled that the provisions of Art. 5, sec. 1, do not apply to cases where the trial court exercises a special or limited jurisdiction conferred by statute . . . [unless] the trial court exceeds its jurisdiction"); *Sugar v. North Balto. M.E. Church, supra,* 164 Md. at 498–500, 165 A. at 707–708; *Goldschmid v. Meline,* 86 Md. 370, 371, 38 A. 783, 784 (1897); *Swann v. M. & C. of Cumberland,* 8 Gill 150, 154 (1849); 2 Poe, *Pleading and Practice,* § 826 (Tiffany ed. 1925).

Consequently, this Court carved an exception out of the general statutes authorizing appeals to this Court for cases in which the county courts, and later the circuit courts, were acting within a special limited statutory grant of jurisdiction. If the circuit court exceeded this special limited statutory jurisdiction, *i.e.,* if it acted outside of the special limited statutory jurisdiction, its action would no longer be within the exception carved out of the general appeal statute. Therefore an appeal under the general appeal statute would lie. *See, e.g., Johnson v. Board of Zoning Appeals, supra,* 196 Md. at 406–410, 76 A.2d at 738–740; *Stephens v. M. & C. of Crisfield, supra,* 122 Md. at 192–193, 89 A. at 429–430; *Savage Manufacturing Co. v. Owings, supra,* 3 Gill at 499.

As pointed out earlier, *Rayner v. State, supra,* relied upon by the majority today, and the authorities furnishing the basis for the previously quoted statement in *Montgomery County v. McNeece, supra,* all involved the rule concerning appeals from lower courts exercising a special limited statutory jurisdiction. In *Rayner,* the defendant had been convicted before a justice of the peace of fishing in Charles County with an illegal trap or net and of fishing without a license. He was fined and his boat and nets were confiscated. The defendant took an appeal to the Circuit Court for Charles County which affirmed. The defendant then sought review by this Court on writ of error, contending that the pertinent statute, which drew distinctions based on residency, was unconstitutional. In an opinion by

Judge Alvey, this Court dismissed the appeal, stating (52 Md. at 375–376, emphasis added):

"[T]he Circuit Court in hearing and adjudicating upon the appeal was not in the exercise of its ordinary common law jurisdiction, but was acting as a Court of special limited jurisdiction, bound to observe and conform to the provisions of the statute, if, in its judgment, the statute was valid. Its judgment, however, *rendered within the limits of the special jurisdiction conferred,* is not only binding, but *is final.* This Court has no power to review it, and consequently the assignment of errors must be dismissed. The cases of the *State vs. Mister,* 5 Md., 11, and *State vs. Bogue,* 5 Md., 352, following the previous cases of *Wilm. & Susq. R. Co. vs. Condon,* 8 Gill & J., 443, and *Webster vs. Cockey,* 9 Gill, 92, are in all respects conclusive of this. See also *Hough vs. Kelsey & Gray,* 19 Md., 451."

The Court went on, in language quoted in part by the majority opinion today, to point out that if the circuit court had acted outside the special limited statutory jurisdiction, or had "transcended the limited jurisdiction conferred upon it" (*id.* at 376), then there would be review in the Court of Appeals. The Court in *Rayner* did not suggest that the right of appeal in such situation would be a "common law" right. Instead, an appeal would lie because the case would no longer be within the area which the Court in *Wilm. & Susq. R. Co. v. Condon, supra,* and *Crockett v. Parke, supra,* had carved out of the general appeal statute. The final portion of the opinion in *Rayner* made it clear that the decision was based entirely on the statutory construction rule concerning the exercise of special limited statutory jurisdiction. Judge Alvey concluded as follows (52 Md. at 376–377, emphasis added):

"It has been urged that, as the rights of personal liberty and of private property are involved, it would be a strange defect of the law, and a great hardship, if the party be denied the right of resorting to this Court to have the question of the constitutionality of the statute, under which it is supposed his rights have been unjustifiably invaded, finally decided. But, though the party may be denied the

right of such resort in the mode and under the circumstances of this case, it does not follow that the law denies to a party feeling himself aggrieved the means of reaching this Court, on such a question, by the proper proceeding. If, instead of the appeal under the statute, the party had applied for the writ of *certiorari,* upon the specific ground of the unconstitutionality of the statute, and the consequent want of power and jurisdiction of the magistrate to proceed under it, *the Circuit Court then would have been in the exercise, not of the special limited jurisdiction, but of its ordinary common law jurisdiction;* and from its judgment in the premises a writ of error or an appeal could have been prosecuted to this Court. *Hall vs. The State,* 12 Gill & J., 329; *Swann vs. Mayor, & c., of Cumberland,* 8 Gill, 150, 155." [6]

*See also Judefind v. State,* 78 Md. 510, 512–513, 28 A. 405, 406 (1894).

Like *Rayner,* the cases relied on in *McNeece,* for the statement concerning a right to appeal when the lower court exceeds its jurisdiction, all involved the rule relating to special limited statutory jurisdiction. For example, *Pr. Geo's Co. v.*

---

**6.** The procedural method for obtaining this Court's review of a justice of the peace's jurisdiction, which was recommended by Judge Alvey in *Rayner,* was followed in *State v. Jacob,* 234 Md. 452, 199 A.2d 803 (1964), a case discussed in the majority's opinion in the present case. In *Jacob,* the State filed an original common law certiorari action in the circuit court to challenge on "jurisdictional" grounds the action of a justice of the peace, and the State appealed to this Court from the circuit court's dismissal of the certiorari petition. Such certiorari action in the circuit court to test the jurisdiction of an inferior tribunal is an original proceeding at law, and the appeal in *Jacob* was authorized by the general statute authorizing appeals from circuit court judgments in actions at law. *See Kawamura v. State,* 299 Md. 276, 283–285, 473 A.2d 438, 442–43 (1984) (pointing out "that a circuit court has jurisdiction to issue a writ of certiorari to a lower court for the purpose of inquiring into that tribunal's jurisdiction," discussing various cases including *State v. Jacob, supra,* and observing that "the common law remedy of certiorari in the circuit court to test the jurisdiction of the lower court" continues to exist). The *Jacob* case does not support a right to appeal in the present case. The case at bar is not an action at law, in which the circuit court was asked to inquire into the jurisdiction of some other tribunal.

*American Federation,* 289 Md. 388, 398–400, 424 A.2d 770, 775–776 (1981), pointed out that the rule was in part embodied in Code (1974, 1980 Repl.Vol.), § 12–302(a) of the Courts and Judicial Proceedings Article, and this Court applied the rule to a circuit court's review of action by local government officials under a local ordinance conferring jurisdiction on the circuit court. *Urbana Civic v. Urbana Mobile,* 260 Md. 458, 461, 272 A.2d 628, 630 (1971), pointed out that, "[i]n the absence of an express grant of appellate jurisdiction we cannot review the decision of the circuit court *in this special statutory proceeding* except on jurisdictional grounds." (Emphasis added). *Darrell v. Biscoe,* 94 Md. 684, 51 A. 410 (1902), also cited in *McNeece,* was a case decided by the circuit court on appeal from a decision by a justice of the peace.

In sum, there is no "common law" principle that, regardless of statute, an appeal will lie whenever the appellant contends that the court below acted outside of its jurisdiction. The *Rayner* case and the cases cited in *McNeece* for this proposition have all involved the rule concerning appeals from decisions pursuant to a special limited statutory jurisdiction. This rule was simply one of statutory construction, involving an interpretation of the statutory provisions generally authorizing appeals.[7]

---

**7.** As acknowledged very early by the Court, this construction of the general appeals statute had no basis in the statutory language. Furthermore, it was not supported by any legislative history or by any other legitimate statutory construction principles. *See Kaczorowski v. City of Baltimore,* 309 Md. 505, 525 A.2d 628 (1987).

Moreover, the General Assembly has largely abrogated the rule, although it has expressly, and unfortunately, left a small class of cases within the rule. Code (1974, 1989 Repl.Vol., 1993 Cum.Supp.), § 12–301 of the Courts and Judicial Proceedings Article, provides that, except as set forth in § 12–302, the right of appeal from a final judgment exists even when a court is exercising a "special, limited, statutory jurisdiction." Section 12–302(a), however, states that, unless a right of appeal is expressly granted by law, § 12–301 "does not permit an appeal from a final judgment of a court entered or made in the exercise of appellate jurisdiction in reviewing the decision by the District Court, an administrative agency, or a local legislative body." Nevertheless, certiorari review by this Court of a circuit court decision, upon appeal from the District Court, is authorized by § 12–305 of the Courts and Judicial

There is no "common law" right to appeal simply because an issue is "jurisdictional." Rather, as the cases discussed earlier hold, today the right of appeal is entirely dependant upon a grant of statutory or constitutional authority. Under this Court's decisions, a claim that an issue is "jurisdictional" does not entitle an appellate court to entertain an appeal if the appeal is not authorized by the pertinent statutes. *See, e.g., Jones v. State, supra,* 298 Md. at 636–637, 471 A.2d at 1056–1057; *Washabaugh v. Washabaugh, supra,* 285 Md. at 401–402, 404 A.2d at 1031–1032; *Eisel v. Howell, supra,* 220 Md. at 587, 155 A.2d at 511; *Medical Examiners v. Steward,* 207 Md. 108, 113 A.2d 426 (1955); *Judefind v. State, supra,* 78 Md. at 511, 28 A. at 405–406; *Shueey v. Stoner,* 47 Md. 167, 170 (1877).[8]

---

Proceedings Article. In addition, in judicial review actions under the State Administrative Procedure Act, appeals from circuit court decisions are authorized. Code (1984, 1993 Repl.Vol., 1993 Supp.), § 10–223 of the State Government Article.

**8.** In the case at bar, the majority opinion takes a very broad view of what is "jurisdictional." The majority, like a few older cases in this Court, appears to view any decision by a tribunal, which is inconsistent with, or unauthorized by, a statute or rule, to be beyond the tribunal's basic subject matter jurisdiction. The more recent cases in this Court have rejected such a position. *See, e.g., Montgomery County v. Ward,* 331 Md. 521, 526–528, 629 A.2d 619, 622 (1993) (administrative agency's setting a case for rehearing, allegedly after the statutory time for rehearings had expired, is not beyond the agency's jurisdiction); *Comm'n on Human Rel. v. Mass Transit,* 294 Md. 225, 233–235, 449 A.2d 385, 389–390 (1982). *See generally Pulley v. State,* 287 Md. 406, 414–419, 412 A.2d 1244, 1248–1251 (1980). This Court in *First Federated Com. Tr. v. Comm'r,* 272 Md. 329, 335, 322 A.2d 539, 543 (1974), in an opinion by Judge J. Dudley Digges, stated as follows:

"If by that law which defines the authority of the court, a judicial body is given the *power* to render a judgment over that class of cases within which a particular one falls, then its action cannot be assailed for want of subject matter jurisdiction."

Under this test, the trial court's order in the present case was not beyond the court's jurisdiction.

In language directly applicable to the present case, this Court, speaking through Judge Cole, said in *Parks v. State,* 287 Md. 11, 16–17, 410 A.2d 597, 601 (1980):

"A statute which seeks to limit the period in which a court should exercise its authority does not deprive it of jurisdiction.... Thus, if

## V.

The Court today, for the first time in its history, recognizes and applies a "common law" right of appeal. Furthermore, the Court recognizes this common law right with regard to a matter which has been the subject of comprehensive legislation enacted by the General Assembly during the past twenty years. *See* Code (1974, 1989 Repl.Vol.), §§ 12–302(c)(1) (right of the State to appeal from an order dismissing a charging document), 12–302(c)(2) (right of the State to appeal specified types of illegal sentences), 12–302(c)(3) (right of the State to appeal, under particular circumstances and conditions, from the decision of a court excluding evidence or returning property on the ground that it was unconstitutionally seized), 12–302(f) (appeal not permitted by either side from most orders of a sentence review panel). Nevertheless, the Court upholds a right of appeal under circumstances where these statutory provisions do not authorize an appeal. Finally, the Court finds a common law right of appeal to an intermediate appellate court which, under the Maryland Constitution, has only statutorily prescribed appellate jurisdiction.

Although the common law right of appeal discovered by the majority today may appear to be of a somewhat limited scope, the basic approach of the majority could have far-reaching consequences. As Chief Judge Murphy pointed out for the Court in *Harrison v. Mont. Co. Bd. of Educ.*, 295 Md. 442, 460,

---

the court exercises its power outside the prescribed period, its judgment is not thereby rendered void but only voidable."

In *Block v. State*, 286 Md. 266, 269–270, 407 A.2d 320, 321–322 (1979), we held that a district judge's revision of a guilty verdict in a criminal case, after the time had expired under former Maryland District Rule 770 for exercising revisory power over a verdict, did *not* constitute a "lack of jurisdiction." The majority's holding in the present case cannot be reconciled with *Parks* or *Block*. The ramifications of the majority's present position concerning what is "jurisdictional" could be quite substantial, as an order rendered by a court lacking jurisdiction is absolutely void.

Nonetheless, in my view it does not matter whether the circuit court in the present case acted in excess of its basic subject matter jurisdiction. Since the State's appeal is not authorized by statute, it should be dismissed regardless of whether the issue is "jurisdictional."

456 A.2d 894, 903 (1983), "the common law is not static; its life and heart is its dynamism—its ability to keep pace with the world while constantly searching for just and fair solutions to pressing societal problems." Thus, a "common law ... doctrine in Maryland is ... subject to modification by judicial decision," *Adler v. American Standard Corp.*, 291 Md. 31, 42, 432 A.2d 464, 471 (1981). If a common law right of appeal to the Court of Special Appeals exists today, presumably it could be extended by judicial decisions to encompass various situations where an appeal is not authorized by statutes but where circumstances may be deemed to justify an appeal.

Moreover, the approach utilized by the majority would not seem to be confined to the right of appeal. There are many other areas of the law which, at an earlier period in history, were governed by common law or equity principles, but which today are generally considered to be entirely statutory. Presumably, in any of these areas, if circumstances arise under which a majority of this Court does not like the result of applying the current statutory provisions, the Court can invoke pre-statutory judicial decisions. I simply cannot subscribe to the view that this Court may reach into a repository of alleged "common law" doctrines whenever it desires to ignore limitations set forth by the General Assembly.

Turning to the facts of the present case, I agree with the majority that the circuit court's action was inconsistent with Maryland Rule 4–345. If the General Assembly had authorized an appeal by the State under these circumstances, I would agree that the circuit court had committed reversible error and would join this Court's judgment. Because the General Assembly has not authorized an appeal by the State in this case, we should vacate the judgment of the Court of Special Appeals and direct that the appeal be dismissed.

Nevertheless, if the issue on the merits is deemed to be sufficiently important, we could set forth our views even while directing that the appeal be dismissed. Although the portion of the opinion setting forth such views would not technically constitute the holding in the case, it would advise trial judges,

lawyers, and others as to the law and would likely accomplish the same purpose as a holding. This course of action has occasionally been taken by this Court in the past. For example, in *Judefind v. State, supra,* 78 Md. 510, 28 A. 405, the issue on the merits concerned the constitutionality of the laws prohibiting certain work on Sundays. While required to dismiss the appeal because of the lack of appellate jurisdiction in this Court, our predecessors went on to express the opinion that the statutes were constitutional, 78 Md. at 513–516, 28 A. at 406–407. *See also, e.g., Roth and Boyle v. House of Refuge,* 31 Md. 329, 334–335 (1869). *Cf. Thanos v. State,* 332 Md. 511, 521–528, 632 A.2d 768, 772–776 (1993). The Court today should deal with the merits of this case in the same manner.

Judges RODOWSKY and BELL have authorized me to state that they concur with the views expressed herein.